HAMILTON MILL & ELEVATOR CO. v. STEPHENVILLE N. & S. T. RY. CO. · (No. 5661.)

(Court of Civil Appeals of Texas. Austin. Oct. 18, 1916. Rehearing Denied Nov. 29, 1916.)

1. CARRIERS ⚖══92 — INTERSTATE SHIPMENTS — DELIVERY ON ORDER — LIABILITY OF CARRIER.

Where the contract of shipment provided for delivery on the shipper's order and instructed the terminal carrier to notify the consignee of arrival of the oats, and the shipper deposited the bill of lading with draft attached, indorsed in blank, in the bank, which placed the amount of the draft to the credit of his checking account, but the terminal carrier in another state had no knowledge of such transaction, and the consignee refused the oats and protested the draft, and the shipper then repurchased the draft and bill of lading, and instructed the terminal carrier to deliver the oats to a broker, and it so delivered them, but more than 48 hours after arrival, and after such delivery the broker secured judgment by default against the shipper for $50 less than the value of the oats, the difference being adjusted by stipulation, the shipper could not, as a matter of law, recover from the initial carrier the value of the oats.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 343, 364–366; Dec. Dig. ⚖══92.]

2. CARRIERS ⚖══178 — INTERSTATE SHIPMENTS — LIABILITY OF CARRIER.

In such action, the terminal carrier was liable only as a warehouseman, and not under Interstate Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 379.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 804–812; Dec. Dig. ⚖══178.]

3. CARRIERS ⚖══92 — INTERSTATE SHIPMENTS — STATUTES GOVERNING.

In an action for value of goods taken on execution against the shipper in favor of his consignee, the liability of the initial carrier is to be tested by that of the terminal carrier.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 343, 364–366; Dec. Dig. ⚖══92.]

Error from Hamilton County Court; J. L. Lewis, Judge.

Action by H. M. Weiser, trading as the Hamilton Mill & Elevator Company, against the Stephenville North & South Texas Railway Company. Judgment for defendant, and plaintiff brings error. Affirmed.

H. E. Chesley and Dewey Langford, both of Hamilton, for plaintiff in error. E. B. Perkins and D. Upthegrove, both of Dallas, and A. R. Eidson, of Hamilton, for defendant in error.

KEY, C. J. The real plaintiff in this case was H. M. Weiser, though he prosecuted the suit in his trade-name of the Hamilton Mill & Elevator Company. He sought to recover from the Stephenville North & South Texas Railway Company, the initial carrier, the value of a certain car of oats shipped by him in his trade-name to Montgomery, Ala. The defendant's answer admitted certain allegations in the plaintiff's petition, denied others, and specially pleaded that, under the law of Alabama, if a shipment was not removed in 48 hours after notice of arrival, the carrier became a warehouseman, and as more than 48 hours elapsed after notice of arrival in this case, it was not liable. It also alleged that after arrival the shipment was rejected by the consignee, and that, upon being notified of that fact, the plaintiff instructed that the oats be turned over to the Dahlberg Brokerage Company, which was done, and the defendant thereby absolved from further liability under the bill of lading. The defendant further pleaded in bar a judgment by the city court of Montgomery, Ala., in favor of the Dahlberg Brokerage Company and against the plaintiff Weiser, by which judgment all of Weiser's interest was divested out of the oats. Replying by supplemental petition, the plaintiff denied that the Dahlberg Brokerage Company was his agent, and denied that the terminal carrier had any right to deliver the shipment to the Brokerage Company, and denied that the plaintiff had any knowledge of the judgment pleaded by the defendant. It was further alleged in the supplemental petition that on the date of the shipment the plaintiff transferred the bill of lading with draft attached to the Hamilton National Bank, and that the latter thereby became the owner of the property shipped, and that thereafter, on the 17th day of August, and after the rendition of the judgment by the Alabama court, the plaintiff acquired title to the property from the Hamilton National Bank. There was a nonjury trial, which resulted in a judgment for the defendant, and the plaintiff has brought the case to this court by writ of error.

We have considered all the questions presented in the briefs, and have reached the conclusion that the judgment should be affirmed; and, without any further discussion, we adopt the findings of fact and conclusions of law filed by the learned trial judge, which are as follows:

---

⚖══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

## "Findings of Fact.

"(1) I find that the Hamilton Mill & Elevator Company is a trade-name under which H. M. Weiser does business at Hamilton, Tex., and that on June 27, 1912, said Weiser delivered to the Stephenville North & South Texas Railway Company, which was at such time and is now a common carrier, a car of oats for through shipment to Montgomery, Ala.

"(2) I find that the contract of shipment, among other things, provided that said oats be delivered to shipper's order, and instructed that the terminal carrier, which was the Mobile & Ohio Railway Company, notify Belser Grocery Company, of Montgomery, Ala., of the arrival of said car of oats. In this connection I find that said car of oats had been sold to said Belser Grocery Company by said Weiser.

"(3) I further find that on the said 27th day of June, 1912, said Weiser indorsed in blank and delivered or deposited the bill of lading to said car of oats, with draft attached on Belser Grocery Company for $471.48, to the Hamilton National Bank, and that said amount was placed to the checking account of the said Weiser, he being at the time a patron of said bank; but in this connection I find that the said Mobile & Ohio Railway Company had no knowledge of such transaction between said Weiser and said bank at any time prior to the delivery of said oats as hereinafter found. Neither did the Dahlberg Brokerage Company have knowledge of said transaction.

"(4) I further find that the bill of lading, with draft attached, was sent to the wrong party, and that there was some delay in presenting the same to the Belser Grocery Company, and that said company refused to receive said oats, and that the draft attached to the bill of lading was protested on the 5th of August 1912.

"(5) I further find that after said draft was protested it was returned to the Hamilton National Bank, and on the 17th day of August, 1912, said Weiser paid said bank the amount of said draft and received back said bill of lading.

"(6) I further find that, after the refusal by the said Belser Company of said car of oats, which oats arrived in due time, and no complaint as to its condition appears to have been made, said Weiser was notified of such refusal, and instructed the Dahlberg Brokerage Company to make indemnity bond and take out the oats and do the best it could with them. In this connection I find that said Mobile & Ohio Railway Company was shown the instructions, which were by wire to the Dahlberg Brokerage Company, and that the Dahlberg Brokerage Company put up with said Mobile & Ohio Railway Company a certified check for the amount of $471.48, plus ten per cent., which check was received by said Mobile & Ohio Railway Company, and said car of oats, in accordance with said instructions by wire, was delivered to said Dahlberg Brokerage Company in good condition.

"(7) I further find that the contract of shipment between the said Stephenville North & South Texas Railway Company and the said Weiser, among other things, provided that after 48 hours elapsed after the shipment arrived, the liability of the railroad company as a common carrier ceased, and after said 48 hours the liability was that of a warehouseman. In this connection, I also find that the law of Alabama provides that after 48 hours the carrier's liability as such ceased, and the liability is then that of a warehouseman only.

"(8) I further find that more than 48 hours elapsed after the arrival of said oats at Montgomery, Ala., before its delivery to said Dahlberg Brokerage Company and notice to Belser Grocery Company.

"(9) I further find that after the execution and delivery of said certified check and the delivery of said oats on the order of said Weiser to the said Dahlberg Brokerage Company, said brokerage company instituted suit in the city court of Montgomery, Ala., against said Weiser, and garnisheed the said Mobile & Ohio Railway Company in said suit. In this connection I find that said court in Alabama has jurisdiction of the subject-matter of this suit; that the question of the ownership of said oats, or the proceeds thereof, was a material question in said suit, and that said Mobile & Ohio Railway Company and the said H. M. Weiser were properly served with the necessary process to give the court jurisdiction of said company and of said Weiser, who was a nonresident and did not answer, and said judgment, under the laws of Alabama, was and is a valid judgment, and is still subsisting as such valid judgment. I also find that said court was a court of record.

"(10) I further find that in said suit said Dahlberg Brokerage Company recovered judgment against said Weiser in the sum of $——— and costs of suit, amounting to $423.81, and that it also recovered against said Mobile & Ohio Railway Company, as garnishee, the amount so recovered, together with cost, amounting to the sum of $423.81; but I further find, in this connection, that by agreement in open court the difference coming to the said Weiser in excess of the amount recovered in said suit was to be adjusted between the parties without that issue being raised in this suit, the plaintiff in this suit in open court expressly stating such, and the defendant in this suit assenting thereto.

"(11) I further find that the said Weiser visited Montgomery, Ala., during the pendency of the controversy out of which this suit grew, and that he wrote a letter to his agent in Hamilton, or rather to himself as Hamilton Mill & Elevator Company, in which he stated, among other things, the following: 'I have gone over the controversy between the Hamilton Mill & Elevator Company and Dahlberg Brokerage Company with reference to commissions and also with reference to the rejected car consigned to Belser Grocery Company, and find the same to be all right and honestly handled by Dahlberg Brokerage Company.'

## "Conclusions of Law.

[1-3] "I find, as a matter of law, that under the above state of facts the plaintiff is not entitled to recover against the defendant, and accordingly here enter judgment that plaintiff take nothing by this suit, and that the defendant go hence without day and recover of and from the plaintiff all cost in this behalf expended, for which execution may issue.

"The above are all my conclusions of law; but, referring to the third paragraph of the motion for new trial, I will state this: In giving judgment, among other things, I said that under the law of Texas, had the Hamilton National Bank been a party to this suit, the doctrine of the case of Adoue & Lobit v. Seeligson, and many other cases cited by counsel, would apply as between the bank and plaintiff in the Dahlberg Brokerage Company's suit. In this case, however, as the bill of lading or the waybill made the delivery of the oats subject to shipper's order, and the shipper having ordered it delivered to Dahlberg Brokerage Company, and the Mobile & Ohio Railway Company not knowing of any transaction between shipper and the bank, such doctrine would not apply, as this suit is brought under the Carmack Amendment to the Interstate Commerce Act, and the liability of the defendant in this suit must be tested by the liability of the terminal carrier, the Mobile & Ohio Railway Company. Besides this, I held that the judgment in the Dahlberg Company's suit was not subject to collateral attack on jurisdictional or other questions involved therein. I also held that the liability of the Mobile & Ohio Railway Company was that of a warehouseman, and that no judgment under the Interstate Commerce Act could be had against said Mobile & Ohio Railway Company. In other words, this action cannot be sustained under the federal law."

Judgment affirmed.