**SOUTHWEST NAT. BANK OF DALLAS v. MISSOURI, K. & T. RY. CO. OF TEXAS et al. (No. 790.)**

Court of Civil Appeals of Texas. Waco.
May 23, 1929.

Rehearing Denied June 20, 1929.

Leake, Henry, Wozencraft & Frank, of Dallas, for appellant.

Thompson, Knight, Baker & Harris, C. C. Huff and J. M. Chambers, all of Dallas, for appellees.

BARCUS, J. This suit was instituted by appellant to recover from appellees, Missouri, Kansas & Texas Railway Company and the Galveston Wharf Company, the value of 75 bales of cotton. The cause was tried to a jury, and at the conclusion of the testimony the trial court instructed a verdict for appellees.

The material facts are undisputed. It appears that the 75 bales of cotton in controversy were shipped from Dublin, Tex., to Galveston, Tex., via the Missouri, Kansas & Texas Railway Company, hereinafter called railway company, by, and consigned to, A. H. Richardson & Co. Said car of cotton reached Galveston at 2:55 p. m., September 24th, and the agent of the railway company immediately notified A. H. Richardson & Co. of the arrival of said cotton. During the afternoon of September 28th the agent of Richardson & Co. surrendered the bill of lading to the agent of the railway company at Galveston with instructions to place said car of cotton for unloading on Cotton Concentration Company track No. 2; and, in compliance with said request, the railway company, at 6:40 a. m., September 29th, placed said car of cotton on the Galveston Wharf Company's track, and said company, at 2:00 p. m. of the same day, placed said car on track No. 2 of the Cotton Concentration Company, to be by it unloaded into its warehouse. The Cotton Concentration Company, at the close of work hours on September 29th, had reached and was ready to begin unloading said car of cotton and would have begun with said car the following morning. On the night of September 29th a fire, originating in the Sulphur plant, spread to the Cotton Concentration

Company's warehouse and destroyed same, together with a large amount of cotton, including the car of cotton in controversy.

Under the custom prevailing at said time, the railway company, in accepting the car of cotton for shipment from Dublin to Galveston, Tex., was to, without any extra expense on the part of the shipper, not only carry said cotton to Galveston, but, acting by its agent, the Galveston Wharf Company, an independent corporation, was to, when requested by the consignee, place same at any point in Galveston for unloading, either at the wharfs for loading on outgoing ships, or at the Cotton Concentration Company's warehouse for storage, or at any other place that the shipper might designate. The expenses of placing said car at the location where the shipper asked same to be placed for the purpose of unloading were defrayed by the railway company. The evidence is conflicting as to whether the railway company or the Cotton Concentration Company paid the men who unloaded the cotton. After same was unloaded it was weighed, sampled, and stored for the use and benefit of, and at the expense of, the owner or consignee. The bill of lading for the cotton in controversy called for its delivery at Galveston, not specifying any particular place.

The claim for the value of the cotton was properly assigned to, and at the time of the trial was owned by, appellant bank.

Appellant sought to hold the railway company and the wharf company jointly liable as common carriers, on the theory that at the time of the fire the cotton had not been delivered at its destination. Appellees seek to uphold the judgment of the trial court on two theories: First, that at the time of the fire the cotton had actually been delivered to the consignee; and second, that, if as a matter of fact the cotton had not been delivered, the railway company was holding the same only as a warehouseman, and as such it was not liable, since appellant did not claim the fire was caused by its negligence. The judgment of the trial court shows that appellant did not seek, and it does not in this court claim it is entitled, to recover by reason of any negligence on the part of appellee, but is only seeking to hold appellees as common carriers. If, as a matter of fact, the cotton in controversy had actually been delivered to the consignee, or if, as a matter of fact, the relationship of common carrier had ceased and that of warehouseman had begun at the time of the fire, then the judgment of the trial court was correct.

The original bill of lading issued by the railway company, identified by both the agent of the owner and consignee and the railway company was what is known as a uniform bill of lading. Among other provisions relative to the carrier's responsibility, a portion of section 1 states: "For loss, damage or delay caused by fire occurring after forty-eight hours (exclusive of legal holidays) after notice of the arrival of the property at destination * * * has been duly sent or given, the carrier's liability shall be that of warehouseman only, except in case of negligence of the carrier or party in possession."

Said bill of lading further provides: "Section 5. Property not removed by the party entitled to receive it within forty-eight hours (exclusive of legal holidays) after notice of its arrival has been duly sent or given, may be kept in car, depot or place of delivery of the carrier or warehouse, subject to a reasonable charge for storage and to carrier's responsibility as warehouseman only, or may be, at the option of the carrier, removed to and stored in a public or licensed warehouse at the cost of the owner, and there held at the owner's risk and without liability on the part of the carrier."

Article 887 of the Revised Statutes provides: "If the carrier at the point of destination shall use due diligence to notify the consignee, and the goods are not taken by the consignee, and have in consequence to be stored in the depots or warehouses of the common carriers, they shall thereafter only be liable as warehousemen.

Article 6394 of the Revised Statutes provides that the railroad companies shall not be allowed to charge for storage upon freight unless the owner or consignee thereof neglects to remove it from the depot of the company within three days after notice of its reception. The record in this case shows without dispute that the car of cotton reached Galveston, its destination, on the afternoon of September 24th, and that the consignee was immediately notified thereof, and that the consignee did not make any request of the railway company to place said car at any particular place for unloading and did not make any demand upon the railway company for possession of said cotton until in the afternoon of September 28th, more than three full days after the cotton had reached Galveston, its destination. Under this state of facts, we think the trial court was correct in holding as a matter of law that at the time the fire occurred, on the night of September 29th, the railway company, if as a matter of fact it could be said the cotton had not actually been delivered, was holding same only in the capacity of a warehouseman. Article 887 of the Revised Statutes above copied provides specifically that, if the consignee does not remove the freight after he is notified of its arrival, the railway company shall thereafter only be liable as warehouseman. G. H. & S. A. R. Co. v. Hunt (Tex. Civ. App.) 32 S. W. 549; Hines v. First Guaranty State Bank (Tex. Civ. App.) 228 S. W. 668, affirmed by Supreme Court, 243 S. W. 972; Missouri Pacific R. Co. v. Haynes, 72 Tex. 175, 10 S. W. 398; Hamilton Mill & Elevator

Co. v. Stephenville, N. & S. T. R. Co. (Tex. Civ. App.) 189 S. W. 774; H. & T. C. R. Co. v. J. W. Geer & Son (Tex. Civ. App.) 236 S. W. 199; St. L. B. & M. R. Co. v. Hicks (Tex. Civ. App.) 158 S. W. 192; T. & P. Ry. Co. v. Robertson (Tex. Civ. App.) 143 S. W. 708; St. L. & S. F. R. Co. v. Akers (Tex. Civ. App.) 73 S. W. 848; H. & T. C. Ry. Co. v. Iversen (Tex. Civ. App.) 196 S. W. 908; American Express Company v. Duncan (Tex. Civ. App.) 193 S. W. 411; St. L. S. W. R. Co. v. Burrus Mill & Elevator Co. (Tex. Civ. App.) 168 S. W. 1028.

■ From the authorities above cited, the rule seems to be established that, where a consignee fails to remove his freight from the railway company within three days, or within the time named in the bill of lading, after he has been notified of its arrival, the railway company thereafter holds same only as a warehouseman. We think the correct interpretation to be placed upon articles 887 and 6394, when construed together, is that after a railway company has given the consignee notice of the arrival and has then kept the goods for three days, during which time it cannot charge storage, its relation as common carrier ceases and that of a warehouseman begins. Appellant contends that, in order for the relationship of common carrier to cease and that of warehouseman to begin, it was necessary for the railway company to unload the goods and store same in its warehouse. The bill of lading issued by the railway company at the time the cotton was shipped provides specifically that the railway company may store the goods in the car or in a public warehouse at its (the railroad's) discretion. We think, under the provision of the contract as construed by the courts in the cited cases, it was not necessary for the railway company, in order to change its relationship from that of common carrier to that of a warehouseman, to unload the cotton and store it either in its own or in a public warehouse.

■ Appellant contends that, by reason of the railway company having undertaken to place the car of cotton on the unloading track of the Cotton Concentration Company's warehouse, it thereby recognized its relationship as common carrier to be still in existence; and claims that the relationship of common carrier on the part of the railway company did not cease until the car of cotton was placed on the warehouse track and actually unloaded and stored in the warehouse. We do not agree with this contention. The record shows without controversy that Galveston was the destination called for in the bill of lading,

and that the cotton reached there and the consignee was notified of its arrival on September 24th, and the consignee made no request for the cotton to be placed on the unloading track and made no effort to obtain possession of the cotton until the afternoon of September 28th, when it surrendered the bill of lading and requested the railway company to place the car on Cotton Concentration track No. 2. We think it would be an unreasonable construction to place on the contract to say that the consignee could leave the cotton in the hands of the railway company for an indefinite time without requesting it to be placed for unloading or without demanding the cotton, and still hold the railway company liable as a common carrier because it had not, by reason of the consignee not having designated same, placed the car on the unloading track. Until the railway company at Galveston was notified by the consignee where it desired the cotton placed for unloading, it could not perform said service. Under the regulations existing between the shipper and the railway company, as well as under the provisions of the statutes of this state, the owner or consignee was authorized to leave the cotton in the hands of the railway company as a warehouseman and the railway company as a matter of law was required to hold same as a warehouseman, if the owner or consignee did not claim the cotton after it had notice of its arrival. Article 6394 of the Revised Statutes provides specifically that, if freight is not called for within three days after the consignee has been notified of its arrival, the railway company can then charge the shipper for the reasonable storage thereof. To hold that the owner or consignee could leave a car of cotton or other freight in the yards of the railway company at Galveston, its destination, for an indefinite length of time without making any request of the railway company to complete its contract of shipment by placing same at the unloading track, and during said time hold the railway company liable as a common carrier, would, we think, be contrary to the positive terms of the bill of lading issued by the railway company and accepted by the shipper and consignee, as well as in conflict with the evident spirit and intention of the statutes.

Under the facts of this case, as revealed by the testimony, we think there was no issue to be submitted to the jury, and that the trial court was correct in instructing a verdict for appellees.

The judgment of the trial court is affirmed.