**DEER PARK BAKING CO, INC., Plaintiff-Appellee v. CLEVE-LAND & CHICAGO MOTOR EXPRESS CO., Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20164.   Decided March 18, 1946.

Sanders & Sanders, Cleveland for plaintiff-appellee.
Edwin C. Reminger, Cleveland, for defendant-appellant.

## OPINION

By MORGAN, J.

In this case the defendant appellant did not file a bill of exceptions and the case is before us on the pleadings and a finding of facts and conclusions of law made by the trial court.

The plaintiff alleged in its petition in this case that on December 30, 1942, it delivered to the defendant and the defendant accepted for shipment to the Coral Shop at Pottstown, Pa., perishable merchandise consisting of fifteen packages of cookies, prepaid, and valued at $141.88 under the terms and conditions set forth in a bill of lading dated December 30, 1942. A copy of the bill of lading was attached to the petition as an exhibit and made a part thereof.

The petition further alleged that pursuant to the agreement, the defendant presented the merchandise to the Coral Shop at Pottstown, Pa., on or about January 9, 1943, and the shipment was refused by the consignee. That on April 2, 1943, the defendant returned said shipment of merchandise to the plaintiff in a deteriorated, spoiled, damaged and worthless condition, and further, "that by reason of defendant's negligence and failure to comply with the terms and conditions set forth in plaintiff's "exhibit A" referred to herein (the bill of lading) plaintiff sold for salvage said merchandise on or about May 24, 1943, for the sum of. $20.72. Wherefore plaintiff was damaged in the sum of $121.16."

The trial court found for the plaintiff and assessed its damages at $137.58.

The trial court found the facts as to the shipment and the bill of lading substantially as set forth in the petition, and also "that the defendant, through its connecting carrier, Yankee Lines Inc., presented said merchandise to the Coral Shop at Pottstown, Pa., for delivery on or about the 9th day of January, 1943, which merchandise, the consignee refused to accept."

The trial court made further findings of fact as follows:

"3. The court further finds that on or about the 21st day of January, 1943 the connecting carrier Yankee Lines Inc. notified the plaintiff of the refusal by the consignee to accept delivery of the merchandise and that immediately, to-wit, on the 21st day of January, 1943, the plaintiff contacted the defendant by telephone and instructed said defendant to return said shipment to the consignor at Chicago, and that on February 16, 1943, the merchandise not having been receiv-

ed the plaintiff by letter again requested the defendant to return said shipment of merchandise.

"4. The court further finds that the merchandise was in possession of the connecting carrier from January 19, 1943 to April 7, 1943, at which time the said merchandise was delivered to the plaintiff in a spoiled, deteriorated and damaged condition.

"5. The court further finds that the defendant failed to use ordinary care in handling said merchandise which was in its connecting carrier's possession and was negligent in failing to return same within a reasonable time, especially in view of the perishable nature of the goods, and that as a result of the deterioration and spoilage plaintiff sold the goods, on or about the 24th day of May, 1943, for salvage purposes for the sum of $20.72 which was the reasonable and market value of the merchandise.

"6. The court further finds that plaintiff complied with all the necessary requirements to prosecute its claim under the Carmack Amendment to the Interstate Commerce Act.

"7. The court further finds that at the time the said merchandise was delivered to the carrier, it was in good condition and free of any spoilage or deterioration."

As a conclusion of law, the trial court found for the plaintiff in the sum of $128.88 with interest at six percent from the 24th day of May, 1943, "By reason of the negligence and carelessness and failure to exercise reasonable care in the handling of said merchandise and in the prompt return to consignor of the merchandise upon refusal by the consignee to accept delivery of the same."

While the trial court found as a fact that after the consignee in this case refused to accept delivery of the merchandise, the plaintiff on January 21, 1943 "instructed" and on February 16, 1943, "requested" the defendant to return the merchandise, the petition did not allege and it was not found as a fact that the defendant made any agreement to return the merchandise. The only contract between the plaintiff and the defendant is evidenced by the bill of lading attached to the petition. Any right on the part of the plaintiff to recover in this case must be based on a breach by the defendant of the obligation incurred by it under the terms of the bill of lading.

By the bill of lading it appears the defendant received from the plaintiff the shipment of perishable merchandise at Chicago consigned to the Coral Shop at Pottstown, Pa. The defendant accordingly was the initial carrier while the

terminal carrier was Yankee Lines Inc.

Under the Carmack Amendment to the Interstate Commerce Act (49 U. S. C. A. §20 [11] ) "a carrier receiving property for transportation under a through contract to a point beyond its own line in another state or territory * * * * * is made liable for any loss, damage or injury to such property caused by any subsequent carrier."

(9 American Juris, 992 §914)

Accordingly, the defendant would be liable for any damage or injury to the property while in its own possession as initial carrier and also in the possession of Yankee Lines Inc., as terminal carrier.

Its obligation as a carrier, however, would be terminated in the manner set forth in 6 O. Jur., 853, §221:

"The common law rule as applied in Ohio is that after notice to the consignee of the arrival of the goods at destination and the lapse of a reasonable time thereafter for the acceptance or refusal thereof, by the consignee, during business hours the responsibility of the carrier for the safety of the property changes from that of an insurer to that of a warehouseman. * * * * * * * *."

"When the consignee, after notice of arrival of property at its destination refuses to accept delivery thereof, the carrier becomes the custodian or bailee of such property with duties and responsibilities with respect thereto similar to those of a warehouseman."

The law, however, is well established that after refusal by consignee of goods in the possession of a terminal carrier, there is no further obligation on the part of the initial carrier but the obligation of a warehouseman rests on the connecting carrier alone.

In Adams Seed Company, appellant, v Railroad Company et al, appellees, 181 Iowa 1051 the Iowa court held:

"An initial carrier is not liable under the Carmack Amendment to the Interstate Commerce Act for any default of the delivery carrier occurring after it has ceased to be a carrier and while it is acting as a warehouseman."

See also a note to the Iowa case above cited, in Lawyers Reports Annotated, 1918 B, page 631.

To the same effect is:

Hogan Milling Co. v Union Pacific R. R. Co. (Kansas) 139 Pacific 397.

Hosiery Mills v Heinz (N. Carolina) 114 S. E. 472.
See also, note in Annotated Cases 1915 B, 85 as follows:

"Where the liability of a connecting carrier has ceased and it has assumed the status of a warehouseman, the amendment does not make the initial carrier liable for any subsequent loss or damage to goods so held."

There is no allegation in the petition and no finding of fact by the court that defendant as the initial carrer or Yankee Lines Inc., as the terminal carrier, failed in any respect to perform fully their obligations as carriers. Likewise, there is no finding that there was any failure on the part of the carriers to notify the consignor within a reasonable time of the failure to deliver the shipment to the consignee.

In view of the fact that there is no finding of any breach by the defendant of its duties as a carrier under the bill of lading, the only possible claim of plaintiff in this case would be against the connecting carrier inasmuch as the trial court found that the "merchandise was in the possession of the connecting carrier from January 19, 1943, to April 7, 1943, at which time the said merchandise was delivered to the plaintiff in a spoiled, deteriorated and damaged condition."

The trial court did find that

"defendant failed to use ordinary care in handling said merchandise which was in its connecting carrier's possession, and was negligent in failing to return same within a reasonable time."

However, the above authorities are conclusive in establishing that the defendant owed no duty of ordinary care while the merchandise was in the possession of the connecting carrier and the defendant could not have been negligent in failing to return the merchandise within a reasonable time inasmuch as it had entered into no contractual obligation to do any such thing.

It is our opinion, therefore, that the petition in this case did not state a cause of action and the finding of facts by the trial court did not support the conclusions of law as found by the trial court, or the judgment.

This case is therefore reversed and final judgment is entered for the defendant.

SKEEL, P. J., and LIEGHLEY, J., concur.

Errata:—In the fourth line or the third from the last paragraph (above) the words "as a warehouseman" should be added after "rier." The third and fourth lines in this paragraph should read as follows: "the merchandise was in the possession of the connecting carrier *as a warehouseman,* etc."