**AMERICAN TRUCKING COMPANY, INC.**

v.

**IOWA BEEF PROCESSORS, INC.**

No. 5511.

Court of Civil Appeals of Texas, Eastland.

Oct. 23, 1980.

Rehearing Denied Nov. 13, 1980.

James M. Stewart, Smith, Smith, Dunlap & Canterbury, Cecil M. Arnold, Dallas, for appellant.

Marvin W. Jones, Gibson, Ochsner & Adkins, Amarillo, for appellee.

McCLOUD, Chief Justice.

The issue is whether the common law liability of a common carrier is reduced to that of a warehouseman upon postponement of acceptance by the consignee following a proper tender by the carrier.

Iowa Beef Processors, Inc., shipper, sued the common carrier, American Trucking Company, seeking damages for spoiled meat discovered by the consignee, Standard Meat Company, while its employees were unloading the carrier's refrigerated trailer. Judgment for $20,223.40 plus interest and attorney's fees was rendered for the shipper.

The carrier appeals. We reverse and render.

In the only liability issue submitted, the jury found that the 576 boxes of meat were in good condition when delivered to American Trucking.

The carrier took possession of 576 boxes of choice top sirloin in Amarillo, Texas, on April 13, 1976, pursuant to a bill of lading requiring the carrier to deliver the shipment to the consignee in Fort Worth, Texas, on April 14, 1976. The trailer was loaded and sealed by the shipper. Upon arrival, it was the consignee's responsibility to break the seal. On April 14 the load of meat was properly tendered to the consignee, but was not unloaded by the consignee because of its lack of freezer space. At that time, the consignee informed the carrier it would be necessary to delay the actual physical delivery. The consignee did not break the seal and examine the meat at the time of the tender. The meat remained in the possession of the carrier in the refrigerated trailer. The carrier's vice–president was notified that the meat could not be unloaded on April 14, and he testified that the continued possession by the carrier was "strictly an accommodation on our part." Two days following the initial tender, the consignee agreed to unload the meat, and the shipment was returned to the consignee's dock. During the unloading, on April 16, it was discovered that a substantial quantity of the boxes of meat were spoiled, and the shipment was rejected.

■ The carrier contends that the shipper failed to prove a prima facie case of carrier liability because there is no proof that the meat was spoiled at the time it was properly and timely tendered to the consignee. We agree.

■ In discussing the general common law rule regarding carrier liability,[1] our Supreme Court said in *Missouri Pacific Railroad Company v. Elmore & Stahl*, 368 S.W.2d 99 (Tex.1963) *affirmed*, 377 U.S. 134, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964):

A shipper of goods by common carrier makes a prima facie case of carrier liability by showing that the shipment was in good condition when delivered to the carrier at place of origin and in damaged condition when delivered by the carrier at destination. The carrier may then escape responsibility for the damage only by showing that it was caused solely by one or more of four excepted perils: (1) an act of God; (2) the public enemy; (3) the fault of the shipper, or (4) the inherent nature of the goods themselves. Where the loss is not due to one of these specified causes, it is immaterial whether the carrier has exercised due care or was negligent.

As the court stated, "the carrier is not an insurer with respect to damage caused solely by one of the excepted perils, but its responsibility is similar to that of an insurer in so far as other risks are concerned." *Elmore & Stahl* did not, however, involve the issue of a proper and timely tender of the goods by the carrier.

The shipper argues that it properly proved a prima facie case because the jury found that the meat was in good condition when delivered to the carrier in Amarillo, and the evidence conclusively establishes that a substantial amount of the meat was spoiled when the trailer was unloaded on April 16.

The court in *Chief Freight Lines Company v. Holiday Inns of America, Inc.*, 469 S.W.2d 413 (Tex.Civ.App.–Dallas 1971, no writ) stated clearly that the common law liability of a common carrier is reduced to that of a warehouseman after an effective tender of delivery. The court said:

The rule has been established that when the carrier tenders delivery to the consignee at a suitable time and place and gives him reasonable opportunity to receive the goods, the carrier's strict liability ceases, and if the goods remain in the carrier's custody after that time its responsibility is reduced to that of an ordinary bailee or warehouseman, that is to

---

1. Tex.Rev.Civ.Stat.Ann. art. 882 (Vernon 1964) provides that the duties and liabilities of carriers shall be the same as are prescribed by the common law except where otherwise provided.

say, liability must depend on proof of the carrier's negligence. *General American Transportation Corp. v. Indiana Harbor Belt R. Co.*, 191 F.2d 865 (7th Cir. 1951, cert. den. 343 U.S. 905, 72 S.Ct. 636, 96 L.Ed. 1324); *Hines v. First Guaranty State Bank of Aubrey*, 243 S.W. 972 (Tex. Com.App.1922); *United Firemen's Ins. Co. v. Thompson*, 259 S.W.2d 612 (Tex. Civ.App., Galveston 1953, writ ref'd n. r. e.); *American Express Co. v. Duncan*, 193 S.W. 411 (Tex.Civ.App., Fort Worth 1917, no writ); *Anthony & Jones Co. v. New York Central & H. R. R. Co.*, 223 N.Y. 21, 119 N.E. 90 (1918); *Deer Park Baking Co. v. Cleveland & Chicago Motor Express Co.*, 68 N.E.2d 824 (Ohio Ct. of App. 1946). The goods need not actually be unloaded or stored, nor need any charge be made for storage in order for the carrier's liability to be reduced to that of a warehouseman. *Southwest Nat. Bank v. Missouri, K. & T. Ry. Co.*, 18 S.W.2d 807 (Tex.Civ.App., Waco 1929, writ ref'd). See also *Trans–Cold Express, Inc. v. Hardin*, 415 S.W.2d 431 (Tex.Civ.App.–Austin 1967, no writ) and *Ferguson v. Red Arrow Freight Lines*, 580 S.W.2d 84 (Tex.Civ. App.–Corpus Christi 1979, no writ).

■ We think the proper rule is stated in 13 Am.Jur.2d, Carriers § 404, p. 887, as follows:

> Where goods have arrived at their destination, and at the request and for the convenience of the consignee are allowed to remain in the custody of the carrier, its liability as an insurer of the goods ceases and becomes thereafter that of a warehouseman or a depositary.

We also note that Tex.Rev.Civ.Stat.Ann. art. 887 (Vernon 1964) provides:

> If the carrier at the point of destination shall use due diligence to notify the consignee, and the goods are not taken by the consignee, and have in consequence to be stored in the depots or warehouses of the common carriers, they shall thereafter only be liable as warehousemen.

■ The carrier is required to properly transport and tender the goods to the consignee. At the time of tender, the consignee has the right to inspect the goods and determine if any damage has resulted during transportation. The consignee should not have the power to prolong the extraordinary responsibility of the carrier by postponing acceptance. See 149 A.L.R. 1118, at page 1120 (1944).

■ In the present case, the carrier specifically pleaded that its duty to the shipper as a common carrier ceased on April 14, 1976 when the load of meat was timely and properly tendered to the consignee. Iowa Beef Processors, Inc. alleged several specific acts of negligence on the part of the carrier. The shipper, however, elected to submit only the common carrier theory of liability. The alleged negligence theory was waived. Tex.R.Civ.P. 279. A remand under these circumstances would not be appropriate. *Owen v. Brown*, 447 S.W.2d 883 (Tex.1969).

The judgment of the trial court is reversed and rendered.

DICKENSON, Justice, dissenting.

I dissent. The jury found that the meat was in good condition when delivered to the common carrier. It is undisputed that the meat was not in good condition when delivered from the carrier to the consignee. This establishes a prima facie case of carrier liability, and the carrier failed to establish any facts which would relieve it from liability.

Our Supreme Court stated the rule in *Missouri Pacific Railroad Company v. Elmore & Stahl*, 368 S.W.2d 99, at 101 (Tex. 1963), *affirmed*, 377 U.S. 134, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964):

> (A) shipper of goods by common carrier makes a prima facie case of carrier liability by showing that the shipment was in good condition when delivered to the carrier at place of origin and in damaged condition when delivered by the carrier at destination.

While recognizing this general rule, the majority follows an exception which would reduce the carrier's liability to that of a warehouseman when delivery is tendered by the carrier and receipt is postponed by

the consignee.[1] I am unable to agree that the exception applies in this case, for there is no proof as to the condition of the meat at the time delivery was originally tendered, two days prior to the actual delivery.

In discussing a similar rule, a unanimous United States Supreme Court stated in *Schnell v. The Steamship Vallescura*, 293 U.S. 296, at 304, 55 S.Ct. 194, at 196, 79 L.Ed. 373, at 377 (1934):

> The reason for the rule is apparent. He (the carrier) is a bailee entrusted with the shipper's goods, with respect to the care and safe delivery of which the law imposes upon him an extraordinary duty. Discharge of the duty is peculiarly within his control. All the facts and circumstances upon which he may rely to relieve him of that duty are peculiarly within his knowledge and usually unknown to the shipper. In consequence, the law casts upon him (the carrier) the burden of loss which he cannot explain or, explaining, bring within the exceptional case in which he (the carrier) is relieved from liability. (parenthetical explanations added)

I agree that it is a harsh rule which would render the carrier liable for this loss when the facts do not establish whether the meat spoiled while in its care as shipper (before the tender of delivery) or after it assumed the status of a warehouseman (after the tendered delivery was postponed by the consignee). The rule adopted by the majority is, however, even more harsh. The shipper was not present, and was not consulted, when the carrier acquiesced in the consignee's postponement of delivery. As stated in a somewhat similar situation in *Travelers Insurance Company v. Delta Air Lines, Inc.*, 498 S.W.2d 443, at 447 (Tex.Civ. App.–Texarkana 1973, no writ):

It would be an even harder rule which placed the responsibility on the shipper in a case of unexplained loss, since the shipper has no way of knowing or proving what happens to the shipment after it is delivered into the hands of the carrier. See also *Texas and Pacific Railway Company v. Empacadora De Ciudad Juarez, S.A.*, 342 S.W.2d 195 (Tex.Civ.App.–El Paso 1961, writ ref'd n. r. e.); *Frosty Land Foods International, Inc. v. Refrigerated Transport Company, Inc.*, 613 F.2d 1344 (5th Cir. 1980).

I would affirm the judgment of the district court.

---

1. In *Trans–Cold Express, Inc. v. Hardin*, 415 S.W.2d 431 (Tex.Civ.App.–Austin 1967, no writ), the shipper's rights were not involved since the lawsuit was between two carriers. It should be noted that the carrier contacted the shipper and followed his instructions immediately after the consignee refused delivery. In *Chief Freight Lines Company v. Holiday Inns of America, Inc.*, 469 S.W.2d 413 (Tex.Civ.App.– Dallas 1971, no writ), the shipper's rights were not involved since the lawsuit was between the consignee and the carrier. Also, the opinion shows that the damage occurred as the freight was being unloaded from the carrier's truck. In *Ferguson v. Red Arrow Freight Lines*, 580 S.W.2d 84 (Tex.Civ.App.–Corpus Christi 1979, no writ), the shipper's rights were not involved since the lawsuit was between the consignee and the carrier. Also, the opinion shows that the internal damage to the compressor was caused by running it after delivery was tendered to the consignee.