**MEXICO NORTHWESTERN RY. CO. v. WILLIAMS.   (No. 212–3310.)**

(Commission of Appeals of Texas, Section A. March 23, 1921.)

**1. Commerce ⚖=35—Shipment held a foreign shipment.**

A shipment of cattle originating in Mexico carried to El Paso, Tex., is a foreign shipment, as the cattle were transported through a port of entry, notwithstanding the shipment was carried only a short distance in Texas.

**2. Commerce ⚖=10—Prior to Cummins Amendment Interstate Commerce Act did not apply to foreign shipment.**

As the purpose of the original Interstate Commerce Act of 1887 (U. S. Comp. St. § 8563 et seq.) was merely to regulate commerce between the several states and compel interstate carriers to make their charges reasonable, section 22 (U. S. Comp. St. § 8595), preserving the existing remedies at common law and as prior to the Carmack Amendment of 1906 to section 20 (U. S. Comp. St. §§ 8604a, 8604aa), prescribing a rule of liability in case of inter-

state shipments, the carriers' liability for such a shipment was either that of the general common law or that determined by the public policy of the particular state, the Commerce Act prior to the Cummins Amendment 1915 (U. S. Comp. St. §§ 8592, 8604a) to the Carmack Amendment, which extended its scope to foreign shipments, did not apply to a shipment from Mexico to Texas.

**3. Commerce ⚖=10—Before action by Congress the liability of foreign carriers in interstate or foreign commerce may be regulated by the states.**

In the absence of action by Congress, the subject-matter of the liability of common carrier for loss or injury to property transported in foreign or interstate commerce belongs to that class of regulations which the states may control.

**4. Commerce ⚖=8(12)—Congress having regulated liability of interstate carrier, state regulations are superseded.**

Congress having legislated by the Carmack Amendment (U. S. Comp. St. §§ 8604a, 8604aa) on the liability of interstate carriers, state laws and rules in so far as applicable to interstate shipments are superseded.

**5. Commerce ⚖=10—Before Interstate Commerce Act was applicable to foreign commerce and where foreign law is not proved, court properly applied its own law.**

Where a shipment from Mexico to Texas occurred before the Cummins Amendment (U. S. Comp. St. §§ 8592, 8604a), so that the Interstate Commerce Act (U. S. Comp. St. § 8563 et seq.) was not applicable, and the Mexican law was not proven, the courts of Texas properly applied their own laws.

**6. Commerce ⚖=10—Before Cummins Amendment requirement of shipping contract that claim must be made on shipment from Mexico within day after delivery void.**

Where a shipment of live stock from Mexico to Texas occurred before the Cummins Amendment (U. S. Comp. St. §§ 8592, 8604a), so that the Interstate Commerce Act (U. S. Comp. St. § 8563 et seq.) was not applicable, a stipulation in the shipping contract requiring notice of claim in writing within a day after delivery of the stock and before the same should be withdrawn from the point of destination and mixed with other animals is void.

**7. Carriers ⚖=218(8)—Duty of carrier to furnish suitable cars notwithstanding stipulation requiring shipper to bed, inspect and accept cars.**

It is the duty of a carrier to furnish suitable cars in which to transport a shipment of cattle, and he cannot escape liability for failure to perform that duty, because the shipping contract required the shipper to bed, inspect, and accept the cars.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Action by F. L. Williams against the Mexico Northwestern Railway Company and another. A judgment in favor of plaintiff was,

on appeal of the named defendant, affirmed by the Court of Civil Appeals (208 S. W. 712), and such defendant brings error. Affirmed.

Turney, Culwell, Holliday & Pollard, of El Paso, for plaintiff in error.

J. A. Gillett, of El Paso, for defendant in error.

TAYLOR, P. J. F. L. Williams, defendant in error, sued the Mexico Northwestern Railway Company, the initial carrier, plaintiff in error, and the El Paso Southern Railway Company, its connecting carrier, in the district court at El Paso, Tex., to recover damages alleged to have been sustained by a shipment of cattle from Madera, Chihuahua, republic of Mexico, to El Paso. Plaintiff alleged that the damage was due to delay, rough handling, and improper bedding of the cars by the railway companies.

Trial before a jury resulted in a judgment for defendant in error against the initial carrier for $3,000. The court instructed a verdict for the El Paso Southern Railway Company, and judgment was entered in its favor. The Court of Civil Appeals affirmed the judgment of the trial court. 208 S. W. 712. Upon application by the Mexico Northwestern Railway Company, the writ was granted.

Plaintiff in error pleaded as a defense that the shipment was made under the terms of a written contract stipulating as a condition for the right to make a claim for damages that the shipper should, within one day after delivery of the cattle, give notice of his claim in writing to some employé of the company designated in the contract.

Defendant in error admitted the signing of the contract and conceded his failure to give the required notice.

Plaintiff in error pleaded also that the shipment originated in the republic of Mexico, and that the rights and liabilities of the parties to the contract of shipment should be determined in accordance with the laws of Mexico.

Defendant in error by supplemental petition pleaded that the rights of the parties should be determined under the laws of Texas; that the notice provision of the contract was unenforceable and void.

Plaintiff in error insists that liability is to be determined under Interstate Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 379, and amendments thereto (U. S. Comp. St. § 8563 et seq.). The law of Texas was applied, and the Court of Civil Appeals upheld the action of the trial court.

[1] The Chief Justice of the Court of Civil Appeals was of opinion that, inasmuch as the cattle were not hauled at all within the United States, except to be switched across the river from Juarez to the stockyards at El Paso, the liability of plaintiff in error should be determined by the laws of Texas. The majority of the court, however, were of opinion that failure to give the notice required by

the contract did not constitute a defense to liability, because of the failure of plaintiff in error to verify its plea of failure to give notice, as provided by article 5714, Revised Statutes.

The destination of the shipment was El Paso. Its movement was from the point of origin at Madera to Juarez, Mexico, on the line of plaintiff in error, and from that point to the Santa Fé stockyards in El Paso over the line of the El Paso Southern Railway.

The shipment moved through the port of entry between Mexico and Texas to the point of delivery, the stockyards in El Paso. It is immaterial, in determining whether the movement constituted a foreign shipment, that it was hauled only a short distance in the state of Texas. It originated in Mexico, an adjacent foreign country, and was completed in Texas after it had passed through the port of entry to destination. It was therefore a foreign shipment.

It does not follow, however, from the fact that the shipment was foreign that it was governed by the Commerce Act of 1887 and amendments thereto.

[2-4] The original act to regulate interstate commerce was passed in 1887. Its purpose was to impose upon railroads engaged in interstate commerce the duty of making their charges for transportation services rendered, reasonable and just, and to prohibit discrimination, preferences, partiality, and inequality in the matters specified between persons, traffic, and localities similarly situated. Roberts, Fed. Liabilities of Carriers, vol. 1, § 61; U. S. v. Union Stockyard & Transit Co. of Chicago, 226 U. S. 286, 33 Sup. Ct. 83, 57 L. Ed. 226. The remedies provided by the act were specific. Section 22 (U. S. Comp. St. § 8595) provided that nothing contained therein should in any way abridge or alter the remedies then existing at common law or by statute, and that the provisions of the act were in addition to such remedies.

It was held in Penn. Ry. Co. v. Puritan Coal Mine Co., 237 U. S. 121, 35 Sup. Ct. 484, 59 L. Ed. 867, that the purpose of the proviso to section 22 was for the purpose of preventing the assumption by the federal courts of exclusive jurisdiction of all suits for damages occasioned by the carrier violating any of the old duties preserved and new obligations imposed by the act. The court say:

"But for this proviso to section 22 it might have been claimed that, Congress having entered the field, the whole subject of liability of carrier to shippers in interstate commerce had been withdrawn from the jurisdiction of the state courts, and this clause was added to indicate that the Commerce Act, in giving rights of action in federal courts, was not intended to deprive the state courts of their general and concurrent jurisdiction."

Section 20 of the act of 1887 was supplemented in 1906 by the Carmack Amendment

(U. S. Comp. St. §§ 8604a, 8604aa). Prior to the enactment of the amendment the rule of the carrier's liability for an interstate shipment of property, as enforced in both federal and state courts, was either that of the general common law as enforced in the federal courts or that determined by the public policy of the particular state. Armstrong v. G., H. & S. A. Ry. Co., 92 Tex. 117, 46 S. W. 33; Chicago, M. & St. Paul Ry. Co. v. Solan, 169 U. S. 133, 18 Sup. Ct. 289, 42 L. Ed. 688; Penn. Ry. Co. v. Hughes, 191 U. S. 477, 24 Sup. Ct. 132, 48 L. Ed. 268.

In the absence of action by Congress the subject-matter of the liability of common carriers for loss or injury to property transported in foreign or interstate commerce belongs to that class of regulations which the states may control. M., K. & T. Ry. Co. of Texas v. Ward, 244 U. S. 383, 37 Sup. Ct. 617, 61 L. Ed. 1213. Congress by the enactment of the Carmack Amendment in 1906 preempted the field of such regulation as to interstate shipments.

The amendment as originally enacted applied only to shipments from a point in one state to a point in another state. It did not include carriers engaged in foreign commerce as distinguished from interstate commerce. Brass v. Texarkana & Ft. Smith Ry. Co., 218 S. W. 1040; Roberts, Fed. Liabilities of Carriers, vol. 1, § 322. It is immaterial that the shipment involved in the case cited was to a foreign country not adjacent to the United States.

By the enactment of the Carmack Amendment Congress legislated upon the subject-matter of the liabilities of common carriers for loss or injury to property transported in interstate commerce. State laws and rules, therefore, in so far as they cover the same field, and in so far as applicable to interstate shipments, have been superseded. Cleburne Peanut & P. Co. v. M., K. & T. of Texas, 221 S. W. 270; Brass v. Texarkana & Ft. Smith Ry. Co., supra.

On March 4, 1915, the first Cummins Amendment (U. S. Comp. St. §§ 8592, 8604a) to the Carmack Amendment was passed. One of its objects was to extend the scope of the Carmack Amendment so as to make common carriers "receiving property for transportation from * * * any point in the United States to a point in an adjacent foreign country," subject to its provisions. Roberts on Fed. Liabilities of Carriers, vol. 1, § 322.

It is settled that the liabilities of carriers in suits of this character involving shipments from an adjacent foreign country to a point in the United States, in which the property alleged to have been injured was received for transportation subsequent to the enactment of the first Cummins Amendment, should not be determined in accordance with the provisions of the Commerce Act and amendments thereto. G., H. & S. A. Ry. Co. v. Woodbury, 254 U. S. 357, 41 Sup. Ct. 114, 65 L. Ed. ——.

The effect of the Cummins Amendment, in so far as is material here, was to so extend the scope of the Carmack Amendment as to make applicable to foreign shipments cases (from an adjacent foreign country) the same laws and regulations that theretofore governed in interstate cases arising under the Carmack Amendment.

This suit arose, however, prior to the enactment of the Cummins Amendment and was not affected by it. Being a foreign shipment, the Carmack Amendment is likewise without bearing.

[5] It is not necessary to decide whether the law of the republic of Mexico would govern ordinarily in such a suit, for the reason that the law of Mexico was not proved. In the absence of such proof the trial court did not err in administering the law of its own jurisdiction. The Scotland, 105 U. S. 24, 26 L. Ed. 1001. Nor is it necessary to decide whether the defense of want of notice was properly at issue.

[6] The case is controlled as to the question of notice by Armstrong v. G., H. & S. A. Ry. Co., supra. In the case cited the suit was for damages growing out of an interstate shipment of cattle. The shipment arose in 1897, subsequent to the passage of the Interstate Commerce Act, and prior to the enactment of the Carmack Amendment. The carrier pleaded as a defense to liability the shipper's failure to comply with the notice provision of the shipping contract, similar to that interposed as a defense in this case.

In determining whether the state laws should be applied, Judge Gaines reviewed, among other federal cases dealing with the Interstate Commerce Act of 1887, the case of Chicago, M. & St. Paul Ry. Co. v. Solan, supra, which was followed. The state law was applied and the notice provision was held to be void.

The same conclusion is applicable in this case. The Court of Civil Appeals did not err in refusing to give effect to the notice provision.

[7] The remaining assignments of error relate to the second paragraph of the court's charge and the failure to give plaintiff in error's special charge No. 6. The charge given was in effect that, if the cars in which the cattle were shipped were not bedded by some material to prevent the slipping of the cattle, and if plaintiff in error was negligent in failing to bed the cars, and such negligence proximately caused the injury complained of to the cattle, the jury should find for plaintiff and assess such damages as were proximately caused by the failure to bed the cars.

The requested charge was, in effect, an instruction to the jury that it was the duty of defendant in error to bed the cars, if bedding was desired, and that failure on his part to do so could not be charged to the negligence of plaintiff in error; that, if the jury should find that a loss was occasioned by reason of

no bedding being in the cars, then it should be borne by defendant in error.

We concur in the holding of the Court of Civil Appeals that it was the duty of the railway company to furnish suitable cars in which to transport the cattle, and that the court did not err in giving the charge complained of, or in refusing to give the special charge requested.

We recommend that the judgments of the trial court and the Court of Civil Appeals be affirmed.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.