## MYERS v. TEXAS LAND & DEVELOPMENT CO. et al.  (No. 7540.)

(Court of Civil Appeals of Texas. San Antonio. March 24, 1926. Rehearing Denied April 28, 1926.)

1. **Carriers 108—Carrier is liable as insurer of goods delivered to it in good condition, but delivered to consignee in bad condition, in absence of affirmative showing of freedom from negligence.**

Carrier is liable as insurer for goods delivered to consignee in damaged condition, but shown to have been delivered to carrier in good condition, in absence of affirmative showing that it was not negligent.

2. **Carriers 131—Specific acts of negligence alleged in action against carrier must be proved to warrant recovery.**

Where specific acts of negligence are charged in action against carrier, plaintiff must prove such negligence or fail in action, as he cannot fall back on general doctrine that carrier must account for poor condition of goods delivered in good condition to excuse it from liability.

3. **Carriers 134.**

Jury finding that Kaffir corn was properly handled, baled, and delivered to carrier *held* sustained by evidence of plaintiff's approval.

4. **Carriers 134.**

In action against carrier for alleged negligence in allowing Kaffir corn to become wet, evidence *held* to disprove alleged negligence.

5. **Appeal and error 882(11).**

Prayer that trial court render judgment on findings of jury, without attacking them, precludes raising question of sufficiency of evidence to sustain them on appeal.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Suit by W. B. Myers against the Texas Land & Development Company and others. Judgment for defendants, and plaintiff appeals. Affirmed.

James M. Taylor and E. B. Ward, both of Corpus Christi, for appellant.

J. D. Todd, of Corpus Christi, E. H. Crenshaw, Jr., of Kingsville, P. B. Randolph, of Plainview, and E. P. Scott, of Corpus Christi, for appellees.

FLY, C. J. This is a suit for damages instituted by appellant against the Texas Land & Development Company and the St. Louis, Brownsville & Mexico Railway Company, alleged to have accrued through the decayed condition of certain baled Kaffir corn, shipped by the land company from Plainview, in Hale county, Tex., to appellant at Robstown, Nueces county; the railway company being the final carrier on the line of shipment. The cause was submitted to a jury on five special issues, and upon the answers to the same judgment was rendered in favor of appellees.

In answer to the issues the jury found that the Land & Development Company loaded upon the cars the Kaffir corn, of the grade and in as good condition as that selected by appellant; that it was properly baled and loaded; that it was not delivered to appellant at Robstown in good condition; that seven tons and 490 pounds of the Kaffir corn was when delivered worth $9 a ton; that the Kaffir corn was free from moisture arising from rain or snow when loaded at Plainview; and that the carriers did not permit the same to become wet during the period of transportation.

In the first amended original petition it was alleged that the railway company, "in handling and transporting the said Kaffir corn, negligently permitted and caused the same to become damp and wet, and in consequence thereof the said Kaffir corn was molded and rotted to the extent that the same was worthless, and was practically so when it was tendered to plaintiff at Robstown, Tex., to his great damage as alleged." These were the only acts of negligence charged against the railway company, and of course the evidence was necessarily confined to those allegations. There is no charge of delay or any improper handling, except that the carrier permitted the hay "to become damp and wet." The jury found that the carrier did not permit the Kaffir corn to become damp and wet while in transit, and it might be inferred, from the fact that when delivered the Kaffir corn was dry and undam-

---

aged on the outside and molded and decayed within, that the cause was inherent and did not arise from the negligence of the carrier.

[1, 2] It is undoubtedly true that, if it had been alleged that the property was delivered to the carrier in good condition at Plainview and had been delivered at Robstown in bad condition, then, in the absence of evidence upon the part of the carrier showing that it had not been guilty of negligence in handling the shipment, it would be liable as an insurer of the property. This is the general, well-established rule, in the absence of allegations of the plaintiff confining the negligence of the carrier to certain specific acts of negligence. When such specific acts of negligence are alleged the rule is subordinated to proof of those acts of negligence, and a failure to prove the allegations is a failure to establish a case of negligence. After failing to prove the specific acts alleged the plaintiff cannot then fall back on the general doctrine that, when a common carrier receives property for shipment, it is liable for its value if it fails to deliver to the consignee as contracted, unless in case of damage it accounts for the same in such way as to excuse it from liability.

The object of pleading is to put the opposing party upon notice of what he will be called upon to meet and it necessarily follows that only those things alleged can be proved. That is an elemental proposition. So it is that, when negligence of a certain character is specifically alleged by either party, the proof must, in order to make a case, establish that particular form of negligence, and all presumptions of negligence from other facts than those alleged can have no force and effect in showing negligence. It would place a defendant at a great disadvantage, and one which would not be tolerated by the courts, if a specific act of negligence was alleged, and when proof of that act was not produced permit the plaintiff to fall back on a legal presumption as to negligence. Appellant destroyed the presumption of negligence by specially pleading the acts constituting it. No authority has been cited contrary to this proposition, nor do we think any such ruling can be found.

There is no merit in the contention that the court erred in submitting to the jury the only issue made by the petition as to the negligence of the railway company.

[3, 4] The evidence sustains the finding of the jury that the Kaffir corn was properly handled and baled and properly delivered to the carrier. The evidence showed that appellant saw and approved the Kaffir corn, and told the land company that it was in proper condition for baling and shipment. It was delivered in the same condition to the carrier that it was when seen by appellant. No case was made against the Texas Land & Development Company.

Not only did appellant allege negligence in such a way as to destroy the presumption of the carrier's liability, but by his evidence he exonerated the carrier from all negligence. He swore:

"If good, dry, thoroughly cured hay had been loaded in those cars, it ought to have come down to me in good shape. I have had experience in shipping hay and storing hay in barns and baling it. If you have got thoroughly cured hay you can put it in your barn in the fall of the year and keep it all the year. * * * My judgment would be that this hay was wet when it was baled; that would be my judgment. When hay is baled wet or green the damage starts on the inside of the bale. That is the condition that I found in this hay mostly."

All of his testimony tended to show that the carrier was not responsible for the damaged condition. To accentuate this appellant testified in answer to his own attorney:

"The mold on the inside of the bales was the worst; the last car it had reached the outside and it had got almost rotten, that is slippery. It got plumb wet on the outside on some of the bales. As to what the difference is when it rains on hay after it is baled and when you bale it when it is wet, well, where the water goes through it, it would be practically the same, if it is put in a closed car. If a shower falls on it after it is baled, there would be some of the bales bad and some of it wouldn't be; some of the bales wouldn't get wet and some would. If it is baled wet or green, why, every bale would be practically the same."

And to show that the bales could not have been injured as they were after passing into the hand of the carrier appellant said: "All these bales were practically the same." That is, they must have been baled "wet or green," and consequently not wet after they were baled. That testimony not only disproved the allegation of negligence of the carrier, but it would have removed the presumption of negligence arising from receiving the property in good condition and delivering it in bad if the allegations of the petition had not already destroyed the presumption.

[5] Under a number of decisions of different courts of Texas, by praying the court to render judgment on the findings of the jury, such findings not being attacked, they are conclusive as to the facts found, and appellant cannot raise the question in this court of the sufficiency of the evidence to sustain such findings. Henne v. Moultrie, 77 S. W. 607, 97 Tex. 216; Waller v. Liles 70 S. W. 17, 96 Tex. 21; Fant v. Sullivan (Tex. Civ. App.) 152 S. W. 515; Blackwell v. Vaughn (Tex. Civ. App.) 176 S. W. 912; Kendrick v. Polk (Tex. Civ. App.) 225 S. W. 826; Fire Association v. Moss (Tex. Civ. App.) 272 S. W. 555.

The judgment is affirmed.