### DEMING v. MISSOURI, K. & T. R. CO. et al.

No. 18530. Opinion Filed June 11, 1929.

Rehearing Denied Oct. 8, 1929.

Earl Bohannon and G. T. Ralls (Leslie W. Lisle, of counsel), for plaintiff in error.

M. D. Green, John E. M. Taylor, Eric Haase, W. R. Bleakmore, and John Barry, for defendants in error.

DIFFENDAFFER, C. The parties hereto are in the same relation as in the trial court and will be referred to herein as plaintiff and defendants.

Plaintiff filed his action in the district court of Coal county to recover damages in the sum of $595 for alleged injury and damage caused by the loss of one mule and injury to four mules, arising out of a shipment of a carload of mules from Oswego, Kan., to Olney, Okla. In his original petition, plaintiff alleged that on the 22nd day of December, 1925, he entered into a written contract with the Missouri Kansas & Texas Railway Company to receive, transfer, and deliver over its line of railroad, and the Chicago, Rock Island & Pacific Railway Company, 28 head of mules from Oswego, Kan., to Olney, Okla. A copy of the contract, known as "Uniform Live Stock Contrakt," was attached to the petition. He then alleged:

"3rd. Plaintiff further states that the defendants in transporting and shipping said 28 head of mules negligently and carelessly acted in such manner with said mules that one mule, a bay mare mule 4 years old weighing about 1,250 pounds and of the value of $175, was missing when the car arrived in Olney, Okla., and four other mules were injured as follows: (Setting out in detail the alleged injury to the four mules.)"

He alleged that he had made and filed a claim with defendant for the damages, but did not allege that said claim was presented within the time provided by the contract, which was six months from the date of the delivery of the mules.

Defendant Missouri, Kansas & Texas Railway Company filed its separate motion to require plaintiff to make his petition more definite and certain by stating definitely the specific acts of negligence claimed and relied upon, and when said acts occurred and whether on its line or on that of the connecting carrier, and to state how and in what manner he claimed defendant had failed to carry out its contract with plaintiff.

This motion was sustained as to the allegations of negligence and overruled as to the second part.

Thereupon plaintiff filed an amended petition in which he omitted the allegations of negligence in handling the shipment of mules and alleged:

"5. That the plaintiff is the lawful holder and owner of the receipt, or bill of lading, or uniform stock contract, all meaning the single contract entered into and heretofore mentioned, and was at all times during the transporting of the said mules the owner of the said mules.

"6. That when the said 28 head of mules arrived at their destination and were delivered to this plaintiff and to his agents, servants and employees, the said herd of mules was lost and injured in the following particulars, to wit:

"(1) One bay mare mule, age 4 years, weight 1,250 lbs., of the value of $175 was wholly missing."

Then follows specific allegations of injury to and loss of the use of the four other mules.

He then alleged that within a period of six months from the date he learned of said loss and injury, to wit, December 26, 1925, he filed a claim in the sum of $175 for the loss of one mule, with the freight claim agent of the Missouri, Kansas & Texas Railway Company at Parsons, Kan., which claim was wholly disallowed, and that later, on February 25, 1926, he filed a further claim in the sum of $200 for the injuries to the four mules.

To the amended petition neither defendant demurred, but each filed separate answer.

In their respective answers defendants denied all the allegations in plaintiff's amended petition and pleaded certain conditions of the shipping contract in bar of and as a defense to the alleged cause of action, and specifically pleaded that by paragraph (a) of section 1 of the contract it was provided that:

"Except in the case of its negligence, proximately contributing thereto, no carrier or party in possession of all or any of said livestock therein described, shall be liable

for any loss thereof or damage thereto, or delay caused by the act of God, the inherent vice, weakness or natural propensity of the animals, or the act or default of the shipper or owner or the agent of either"

—and that by paragraph (b) sec. 1, it was further provided:

"That unless caused by the negligence of the carrier or its employees, no carrier shall be liable for or on account of any injury or death sustained by said livestock occasioned by any of the following causes: Overloading, crowding one upon another, escaping from cars or pens, kicking or goring or otherwise injuring themselves or each other, suffocation, fright, heat or cold, changes in weather or delay caused by stress of weather or damage to or obstruction of track, or other causes beyond the carrier's control."

They further pleaded the provisions of paragraph (c) of sec. 2 of the contract, the applicable part of which reads:

"Claims for loss, damage, or injury to live stock must be made in writing to the originating or delivering carrier or carriers issuing this bill of lading within six months after delivery of the live stock (or, in case of export traffic, within nine months after delivery at port of export) or, in case of failure to make delivery, then within six months (or nine months in case of export traffic), after a reasonable time for delivery has elapsed; provided, that if such loss, damage or injury was due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, then no notice of claim nor filing of claims shall be required as a condition precedent to recovery."

They then specifically deny that any claim or claims for loss, damage, or injury to the mules was made in writing with the originating or delivering carrier within six months after the date of delivery of the live stock as required by the shipping contract. They also alleged that if the shipment was damaged as alleged in the petition (which is specifically denied), plaintiff and his agents were guilty of carelessness and negligence which contributed thereto. Plaintiff replied by general denial. A jury was duly empaneled for the trial of the issues as thus joined, and when plaintiff sought to introduce evidence in support of his petition, defendants objected to the introduction of any evidence on the grounds:

"That said first amended petition fails to state facts sufficient to constitute a cause of action against this defendant, for the reason and in that said amended petition fails to charge any negligence on the part of the defendant carriers, or either of them, in the handling and transporting of the shipment in question; and upon the further ground that the petition fails to charge that a written notice of the damage or injury to the animals was given in writing to the agent of the destination carrier, before said live stock was removed, as provided in the contract of shipment.

"And upon the further grounds that no joint liability is charged against the Katy and Rock Island, and the summons and the pleadings show that the defendant M., K. & T. Railroad was not served in this county, and is not charged with operating any line of railroad in this county."

This objection was sustained, and upon request of defendants the jury was instructed to return a verdict for defendants. From this verdict and the order overruling the motion for new trial, plaintiff brought this appeal. After the appeal was perfected, plaintiff, Robert O. Deming, died, and the cause has been revived in the name of Christiana E. Deming, executrix of the will of Robert O. Deming, deceased.

The record does not disclose upon which of the three grounds set out in the objection to the introduction of any evidence the trial court based its ruling, but defendants in error in their brief state:

"The trial court's view of the matter appears from the colloquy occurring between the court and plaintiff's counsel (70-73) that a cause of action had not been pleaded under the conditions of the contract, in that negligence was not pleaded."

Thus the question presented is, Was it necessary that plaintiff, in order to state a cause of action, allege negligence of defendants in handling the shipment, in connection with the other allegations?

It seems to be conceded that the liability of defendant, if any, arises under the provisions of the Act of Congress, February 4, 1887, as amended by Act of March 4, 1915, U. S. Stat. at Large, vol. 38, part 1, p. 1196, commonly known as the Cummins Amendment, which in part reads:

"That any common carrier, railroad, or transportation company subject to the provisions of this act receiving property for transportation from a point in one state or territory, District of Columbia, to a point in another state, territory, District of Columbia, or from any point in the United States to a point in an adjacent foreign country shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such

property may pass within the United States or within an adjacent foreign country, when transported on a through bill of lading, and no contract, receipt, rule, regulation, or other limitation of any character whatsoever, shall exempt such common carrier, railroad or transportation company from the liability hereby imposed."

The liability, if any, is for any loss, injury, or damage caused by the initial carrier or by any common carrier, railroad, or transportation company to whom the property may be delivered or over whose line or lines such property may pass within the United States or any adjacent foreign country when transported on a through bill of lading.

In Galveston, H. & S. A. R. Co. v. Wallace, 223 U. S. 481, 56 L. Ed. 516, in an opinion by Mr. Justice Lamar, discussing the effect of a through bill of lading, it is said:

"The carrier and its agents, having received possession of the goods, were charged with the duty of delivering them or explaining why that had not been done. This must be so, because carriers not only have better means, but often the only means, of making such proof. If the failure to deliver was due to the act of God, the public enemy, or some cause against which it might lawfully contract, it was for the carrier to bring itself within such exceptions. In the absence of such proof, the plaintiffs were entitled to recover, and the judgment is affirmed."

In Ft. Smith & Western R. R. Co. et al. v. Syracuse Portrait Co., 117 Okla. 113, 245 Pac. 600, a case involving an interstate shipment, this court said:

"In making out its case plaintiff proved its contract, the delivery of the goods by plaintiff to defendant for safe carriage and delivery at destination, the arrival of the goods at Oklahoma City, their value, and their nondelivery, and thereupon rested its case. This made a prima facie case for plaintiff, and it devolved upon the defendant to excuse the nondelivery."

In McFadden v. Mo. Pac. Ry. Co. 92 Mo. 343, 1 Am. St. Rep. 721, it was held that a petition which alleged delivery and loss of mules whilst in the possession of defendant as a common carrier was sufficient.

We think allegations of negligence become essential only where plaintiff fails to file his claim for damages within the time provided by the contract. The last two provisions of the Act of Congress, as amended, are:

"Provided further: That it shall be unlawful for any such common carrier to provide by rule, contract, regulation, or otherwise, a shorter period for giving notice of claims, than 90 days and for the filing of claims for a shorter period than four months, and for the institution of suits than two years: Provided, however, that if the loss, damage, or injury complained of was due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, then no notice of claim nor filing of claim shall be required as a condition precedent to recovery."

These provisions were incorporated in the contract here involved. Their effect and meaning have been construed by the federal courts in a number of cases.

In Barrett v. Van Pelt, 268 U. S. 85, 69 L. Ed. 857, it was said:

"No notice of claim having been given, and no claim having been filed, as required by the uniform express receipt, it was incumbent upon the respondent to show loss, damage, or injury due to delay by carelessness or negligence of the company."

Chesapeake & O. Ry. Co. v. Thompson Mfg. Co., 270 U. S. 416, 70 L. Ed. 659, is a case wherein it was held that plaintiff had the burden of proving the carrier's negligence solely because he had failed to give notice and file claim within the time provided by the contract of shipment. It was pointed out that the claimant at the trial made no attempt to show compliance with the bill of lading for written notice of its claim by the carrier, but relied wholly upon proof of delivery of the goods to the carrier in good condition and delivery by the carrier at destination in a damaged condition. It was held that if the plaintiff did not bring the case within the terms of the final proviso (of the Cummins Amendment), its failure to give notice of claim would bar it from recovery. It was further held that the plaintiff therein had the burden of proving the carrier's negligence as one of the facts essential to recovery, because of its failure to file its claim within the time provided by the contract.

With reference to the use of the words "carelessness and negligence," as used in the proviso, the court said:

"We think that by the use of the word 'carelessness or negligence,' it was intended to relieve the shipper from the necessity of making written proof of claim when, and only when, the damage was due to the carrier's actual negligent conduct, and that by carelessness or negligence is meant not a rule of liability without fault, but negligence in fact. See Barrett v. Van Pelt, supra."

It was further held:

"When he introduced evidence to show

delivery of the shipment to the carrier in good condition and its delivery to the consignee in bad condition, the petitioner became subject to the rule applicable to all bailees, that such evidence makes out a prima facie case of negligence. * * * The effect of the respondent's evidence was, we think, to make a prima facie case for the jury."

It is therefore clear that when plaintiff alleged that when the mules were delivered to the defendant Missouri, Kansas & Texas Railway Company at Oswego, Kan., they were all in good condition, and that when the shipment arrived at its destination in Olney, Okla., one mule was wholly missing and four others were injured and crippled and not in good condition, his petition stated a cause of action, and it was error to sustain the objection to the introduction of any evidence.

It is contended by the defendant that the failure of plaintiff to allege compliance with paragraph (c) of sec. 4 of the contract, which reads:

"(c) Before the live stock is removed from the possession of the carrier or mingled with other live stock, the shipper, owner, consignee or agent thereof shall inform in writing the delivering carrier of any visible or manifest injury to the live stock"

—rendered the petition fatally defective, and the motion was properly sustained on that ground. This contention might be held good as to the claim for damage for injury to the four mules which were delivered, but could have no application to that part of the shipment which plaintiff alleges was wholly missing, and never delivered. Plaintiff could not point out to and inform the delivering carrier of any visible or manifest injury to any of the live stock which was not delivered. Patterson v. M., K. & T. Ry. Co., 24 Okla. 747, 104 Pac. 31; C., R. I. & P. Ry. Co. v. Spear, 31 Okla. 469, 122 Pac. 228.

In C., R. I. & P. Ry. Co. v. Spear, supra, it was held:

"(a) Cattle that died in the car whilst in transit are not within said clause requiring said notice."

For the reasons stated, the judgment should be reversed, and the cause remanded, with directions to grant plaintiff a new trial.

BENNETT, HERR, HALL, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.