11 N.J. Super. 129 (1950)
78 A.2d 150
NEW JERSEY BELL TELEPHONE COMPANY, A CORPORATION, PLAINTIFF,
v.
PENNSYLVANIA-READING SEASHORE LINES, A CORPORATION, AND MARTIN RAGEN, INDIVIDUALLY AND TRADING AS RAGEN'S TRANSPORTATION COMPANY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided December 29, 1950.
*131 Messrs. Thomas N. Bantivoglio and James Hunter, 3rd, for plaintiff (Messrs. Boyle, Archer & Greiner, attorneys).
Mr. Blaine E. Capehart and Grace Heritage Smith for defendant, Pennsylvania-Reading Seashore Lines (Messrs. Richards, Capehart, Smith & Wood, attorneys).
Messrs. William G. Bischoff and Horace M. Shell, of Philadelphia, Pa., for defendant, Martin Ragen, individually and t/a Ragen's Transportation Co. (Messrs. Carroll, Taylor & Bischoff, attorneys).
DONGES, A.J.S.C.
This suit was instituted on three counts. The first two counts are predicated upon the provisions of the Interstate Commerce Act, 49 U.S.C.A., § 1 et seq. The first count seeks recovery from the Pennsylvania-Reading Seashore Lines, and the second count seeks recovery from Martin Ragen, individually and trading as Ragen's Transportation Company. The third count is against Ragen and seeks recovery on the theory of negligence.
*132 The case was tried without a jury. Pursuant to Rule 3:52-1 of the Rules of Civil Procedure, this court makes the following findings of fact:
On April 18, 1947, United States Motors Corporation shipped in interstate commerce one crate containing a generator engine from Oshkosh, Wisconsin, to the plaintiff in Vineland, New Jersey, under a uniform straight bill of lading. The car containing the crate arrived at Vineland, New Jersey, on May 5, 1947, and was placed at the public delivery track on May 7, 1947.
On May 8th, employees of the defendant Martin Ragen, appeared at the freight station for the purpose of taking the crate to plaintiff's premises, which were also located in Vineland. These employees testified that they saw the crate in the railroad car and that it had broken loose from its moorings and was "on an angle." Some of the slats on the outside crate were broken, and there were floor marks showing that the crate had shifted in the car. The man in charge of Ragen's employees, a Mr. Quinn, reported the condition at the freight office and was told it was all right. Ragen's employees then proceeded to load the crate on their truck.
The truck was then driven to Ragen's garage where it remained for about a week, due to a strike at the plaintiff's premises. There was testimony that Ragen's men were careful in the entire process of removing the engine from the freight yard to the plaintiff's premises and that no damage occurred to it during that time. The true extent of the damage was not discovered until the engine was uncrated at plaintiff's premises.
The damage was stipulated to be $1,426.76. It was also stipulated that the engine was delivered in good condition to the initial carrier.
It is important to note at the outset that Ragen's Transportation Company was performing a local service for plaintiff, in transferring the engine from one section of Vineland to another. It is, therefore, not a carrier subject to the provisions of 49 U.S.C.A., § 1 et seq., nor is it entitled to *133 the provisions of the bill of lading. In order to hold Ragen responsible in damages, it is necessary for plaintiff to show at least that the damage was done while the machinery was under his control. McMahon v. American Ry. Express Co., 6 N.J. Misc. 468 (Sup. Ct. 1928); 13 C.J. Secundum, § 84, p. 168. The facts in this case do not support this allegation. I find as a fact that the machinery was damaged before Ragen gained control thereof. For this reason, a judgment of no cause of action will be entered in favor of the defendant Ragen.
The defendant, Pennsylvania-Reading Seashore Lines does come within the provisions of 49 U.S.C.A., § 20 (11). Under this federal statute, the delivering carrier, under an interstate contract of affreightment or through bill of lading, is liable for goods lost or damaged in transit by it or by any of the common carriers to which such property may be delivered or over whose lines such property may pass. 49 U.S.C.A., § 20 (11), as amended July 3, 1926, c. 761, 44 Stat. 835; March 4, 1927, c. 510, § 3, 44 Stat. 1448; April 23, 1930, c. 208, 46 Stat. 251. See also 13 Corpus Juris Secundum, Carriers, § 424b (2), pp. 929 and 930. It, therefore, follows that in such cases it is only necessary for the consignee to allege and prove (1) that the initial carrier received the shipment in good condition, (2) that the shipment arrived at its destination in a damaged condition, and (3) the amount of loss.
Since the Pennsylvania-Reading Seashore Lines was the delivering carrier in this case and since the first and third elements enumerated above have been stipulated, the only important factual question remaining is the condition of the machinery when it arrived at Vineland. I have found that the damage occurred prior to delivery to Ragen and, therefore, at some time prior to its delivery at Vineland.
Accordingly, judgment will be entered in favor of plaintiff and against the defendant Pennsylvania-Reading Seashore Lines in the amount of $1,426.76.