**SOUTHERN–PLAZA EXPRESS, Inc., Appellant,**

v.

**Neal HARVILLE, Jr., and Joni Ruth Harville, d/b/a Harville Rose Service, Appellees.**

No. 15864.

United States Court of Appeals Fifth Circuit.

May 15, 1956.

Rehearing Denied June 11, 1956.

O. D. Montgomery, Dallas, Tex., of Callaway, Reed, Kidwell & Brooks, Dallas, Tex., for appellant.

F. Lee Lawrence, Tyler, Tex., W. Dewey Lawrence, Lawrence & Lawrence, Tyler, Tex., for appellee.

Before RIVES, TUTTLE and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This is an action to recover for damage to 835 cartons of rose bushes shipped by the plaintiffs from Tyler, Texas, to Baltimore, Maryland, via the defendant and an interlining motor carrier. The jury rendered a verdict of $2,004 for the plaintiffs from which the defendant appeals on the grounds that it is against the weight of the evidence and founded on erroneous instructions by the trial court.

The plaintiffs' evidence tended to show that the cartons of rose bushes were delivered to the defendant in the afternoon of March 2, 1954, for immediate shipment to its consignee, the American Stores Co., in Baltimore, Maryland. Each carton contained eight bushes of different varieties, individually packed. In order to provide sufficient moisture for the bushes during the trip, the roots were wrapped in damp sphagnum moss, around which was placed waterproof paper. Then each bush was enclosed in an aluminized bag, the top of which was wired around the stems as tightly as possible. The bushes were laid, alternately, crown-to-roots in the cartons,

which had ventilating holes in each end. It is uncontroverted that this is standard packaging procedure in the rose shipping industry.

Mrs. Harville testified that the roses were placed in the van in good condition, with none of the bags or labels spoiled, and none of the cartons wet or moist. Mr. Peavler, the defendant's terminal manager, was also present for thirty minutes to an hour during the packaging and loading, which took place simultaneously, and noticed nothing unusual or slipshod about the operation. In addition, the bill of lading expressly stated that the goods were received in apparent good order.

A week later the shipment was delivered to the American Stores Co. warehouse in Baltimore by the Eastern Motor Express, whose drivers had brought the van from St. Louis, Matthew Wilson, a representative of the Stores Co., there inspected the shipment by going through the center of the load and picking out samples, on which he found the wrappers soiled and damp, the labels destroyed, and the cartons stained and damp. Also, some of the rose stems were showing mold. He thereupon notified the Eastern Motor Express that the shipment was rejected, and the carrier telegraphed this fact to the plaintiffs, calling their attention to a provision in the bill of lading allowing the carrier under such circumstances to sell the shipment to the best advantage at private or public sale. The plaintiffs agreed to such a sale, without waiver of their rights.

On the next day, the shipment was inspected, at the instance of Eastern Motor Express, by the Chief Inspector for the Maryland State Horticultural Department. He found the roses healthy, free of seriously injurious insects and plant diseases, and not frozen. However, he found that some of the bags in which the roots of the rose bushes had been packed were breaking or had had their labels spoiled, and that many of the containers were soiled or moist. Thereafter, the roses were sold at a distress sale to the American Stores Co., which

paid forty cents a package for them, and resold them without repackaging the bushes or replacing the labels. The proceeds of the sale to the American Stores Co. were paid into court, and the jury's verdict represents the difference between this amount and the seventy-cent market value of undamaged packages.

The defendant offered evidence that throughout the trip the doors of the van were sealed, although Wilson testified that they were open when he first saw the shipment. The van had double walls, and did not leak, and the cartons were not exposed to rain, snow, sleet or moisture during the trip. All seven drivers who handled the shipment testified that they had normal runs, without accident or unusual occurrence or delay.

The weather was below freezing along the route of travel, however, reaching a low of seven degrees at Waynesville, Missouri. The defendant does not offer protective service against cold weather, in its trailer equipment, and the plaintiffs accepted the trailer with knowledge that it was not heated. Mrs. Harville stated that she understood that in case of bad weather, the defendant's truck would "lay over" in the carrier's buildings, but Mr. Peavler denied that any such representation had been made.

The plaintiffs relied in the trial court on the prima facie case in their favor arising from the evidence of delivery of the goods to the carrier in good condition and subsequent receipt by the consignee in damaged condition. The defendant, while conceding that such a prima facie case would arise if the plaintiffs had pleaded only these facts, contends that the plaintiffs alleged particular acts of negligence which they had the burden of proving specifically, without the aid of a prima facie case. In support of this argument it cites Myers v. Texas Land & Development Co., Tex.Civ. App., 282 S.W. 919.

Besides delivery of the bushes in good condition and their subsequent receipt in damaged condition, the plaintiffs, alleged that "if it had been properly handled and transported by de-

fendant," the shipment would have reached Baltimore in virtually the same condition in which it had been delivered to the carrier, and that the damage was caused by "negligent and careless handling." It is settled that allegations of negligent handling or delay are only general allegations which do not prevent a shipper's reliance on the prima facie case arising from a safe condition of goods on delivery and a damaged condition on receipt. Texas Mexican R. Co. v. Canales, Tex.Civ.App., 299 S.W. 668. The Myers case is not contrary to this, the shipper there alleging not only negligent handling of a shipment of corn, but that the carrier "negligently permitted and caused the same to become damp and wet, and in consequenec thereof the said Kaffir corn was molded and rotted to the extent that the same was worthless."

In the instant case, not only were the particular acts of negligence by the carrier not specified in the complaint, they were never made clear at the trial. There was some speculation, more on the defendant's part than on the plaintiffs' that the damage might have been caused by moisture in the sphagnum moss freezing, expanding, and breaking the bags. Thus Mrs. Harville admitted on cross-examination that "anything that is wet could freeze," and Wilson stated that he supposed that the damage could have been caused by freezing weather. On the other hand, the Chief Inspector for the Maryland State Horticultural Department found the roses healthy and testified that "there was no indication of the plants having been frozen." Thus it seems clear that neither in their pleadings nor in their evidence did the plaintiffs rely on specific acts of negligence as a basis for recovery. To the contrary, all the evidence regarding the handling of the shipment and the weather along the route was introduced by the defendant, which sought to rebut the plaintiffs' prima facie case by proving that the damage was caused by an Act of God in the form of freezing weather.

Secondly, the defendant argues that the court erred in refusing to direct a verdict in its favor because there was no evidence that its employees were guilty of any negligence, "whether alleged or not." It points out that the van was closed throughout the trip, that it did not leak, and that, in any event, the drivers encountered little precipitation en route. Therefore, concluding that the moisture must have come from within the van, it offers two theories: (1) that the moisture in the moss froze and burst the bags; (2) that the bushes were originally packed in excessive moisture. However, both of these hypotheses have the infirmity of being contradicted by the evidence in the case: in regard to the freezing, by the horticulturist's testimony that there was no indication of the plants having been frozen; and in regard to excessive moisture in the packing, by the testimony of Mrs. Harville and Mr. Peavler, the carrier's agent, that the plants were properly packaged, and by the statement in the bill of lading that they were received in apparent good order. Moreover, there is the possibility that although the drivers testified that they had normal runs, they in fact permitted the load to shift, by indifferent driving, in such a manner as to crush the packages, thus destroying the labels, tearing the waterproof bags, and permitting moisture to escape. This could easily occur in a week-long shipment of an 18,000-pound load. In this connection, it is significant that most of the drivers had only a vague recollection of this particular trailer, and the substance of their testimony was that they encountered no unusual incidents while hauling it, not that they had any clear remembrance of how the shipment was handled. Quite plainly, then, the trial court was correct in refusing to hold that the plaintiffs' prima facie case had been rebutted as a matter of law.

Consistent with its theory that the damage was caused by freezing, the defendant requested that the court charge the jury, first, that if it found that the

sphagnum moss contained moisture liable to freeze, this would constitute an inherent defect in the shipment for which it was not liable unless the defendant or its connecting carrier was guilty of some act of negligence contributing to the damage, and that unless the plaintiffs proved some act of negligence, the verdict would be for the defendant; second, that if it found that the damage was caused by freezing of moisture around the roots of the bushes, then the verdict would be for the defendant. In response to this latter request to charge, made as an exception to the main charge, the court instructed that the defendant was under no obligation to furnish a heated truck or trailer or a truck or trailer otherwise constructed with protection against freezing, and that freezing weather would be an Act of God; but that if upon such weather occurring, the defendant had an opportunity in the exercise of reasonable care to take action to prevent damage to the bushes, and failed to do so, it would be liable for any damage proximately caused by such failure.

■ With respect to the first charge, it is plain that the defendant here again attempted to avoid the effect of the plaintiffs' prima facie case and place upon the plaintiffs the burden of proving a specific act of negligence in the handling of the shipment. That the moss contained moisture liable to freeze is uncontradicted; moreover, it is quite clear that if it froze and caused the damage sued for, without any concurring act of negligence on the carrier's part, this would defeat the plaintiffs' action. However, the requested instruction left out the crucial finding that the moss in fact froze and caused the damage, a greatly disputed and indeed an unlikely occurrence, which, by omission, it asked the court to assume. In the second request, it included this element but excluded the element that it must also be free of any concurring negligence, and when the trial court added the necessary qualifier, it objected. Thus both requests were incomplete and inaccurate in themselves, but were properly covered by the court's supplemental charge.

■■ In regard to its second requested instruction, the defendant asks what steps the jury might have found it should have taken in the event of freezing weather. There was no evidence of negligent delay, but Mrs. Harville testified that it was her understanding that a truck with perishables would "lay over" during cold weather. Mr. Peavler denied that the defendant had ever represented that it offered such a service, but the reconciliation of this conflict of testimony was for the jury, which was also the arbiter of what would have been reasonable under the circumstances. This court cannot say that as a matter of law the defendant did not offer nor should it reasonably have offered such protection, the general rule being that a carrier's negligence which concurs with an Act of God renders the carrier liable to the shipper for damage so caused. Harrison v. Chicago & Alton Railroad Co., 209 Mo. App. 526, 239 S.W. 871. Jackson & Perkins Co. v. Mushroom Transp. Co., 351 Pa. 583, 41 A.2d 635, is not inconsistent with this rule, because in that case there was no evidence upon which a jury could find that the carrier failed to take proper steps to protect the shipment from freezing.

■ Finally, the defendant urges error in the trial court's allowing the jury to assess damages for the depreciation in market value to the whole shipment, instead of only to those packages individually inspected by Wilson. Both Wilson and the Maryland state horticulturist inspected by sample and reached conclusions regarding the shipment on this basis, rather than by examining each of the 835 cartons. Sample examination by one skilled in such a practice forms a sufficient basis for a jury inference about the condition of a whole shipment. Perkett v. Manistee & N. E. R. Co., 207 Mich. 32, 173 N.W. 359; Meltzer v. Pennsylvania R. Co., D.C.E.D.Pa., 29 F. Supp. 840. Here there was no evidence of the number of cartons examined by either inspector, but the entire shipment

was sold at public sale and presumably brought the best price available for the lot. The court properly referred to the jury the question of the extent of the damage.

The judgment is

Affirmed.