**TEXAS AND PACIFIC RAILWAY COMPANY, Appellant,**

v.

**EMPACADORA DE CIUDAD JUAREZ, S.A., Appellee.**

No. 5424.

Court of Civil Appeals of Texas.

El Paso.

Dec. 21, 1960.

Rehearing Denied Jan. 18, 1961.

196

See also 309 S.W.2d 926.

Scott, Hulse, Marshall & Feuille, W. A. Thurmond, J. F. Hulse, El Paso, for appellant.

Andress, Lipscomb, Peticolas & Fisk, El Paso, for appellee.

ABBOTT, Justice.

This was a case brought by Empacadora de Ciudad Juarez, a Mexican corporation, plaintiff below, appellee here, against Texas and Pacific Railway Company, defendant below, appellant here, for damages arising out of a shipment of beef by appellee, via appellant's railroad and connecting carriers, from Juarez, Mexico, to Jamaica, New York. The case was pleaded and tried by appellee on two theories: (1) that the meat in question was in good and sound condition when delivered by appellee to appellant for shipment, and that the same was spoiled when it arrived in New York, and was of no value; and, (2) that the negligence of appellant in furnishing a defective car, failing to properly inspect said car, and other acts of negligence on the part of appellant, was the cause of such damage. The case was tried before the court without a jury and resulted in a judgment for appellee, for the total value of the car of meat. From that judgment, appellant has perfected its appeal and is properly before this court. Appellant has raised twenty assignments of error, which we believe can be discussed generally in two groups. The first group concerns the

first theory of recovery by appellee, and the second group, the second theory.

The facts in this case show the following: The meat involved came from cattle slaughtered on May 12, 1952, and was kept under proper refrigeration until shipped. The meat was boned and cured to meet specifications set out by the United States government. The meat was inspected by officials of the Mexican government on several occasions while in storage, and found to be in good condition. Further testimony showed that the meat was shipped according to market demand, and that the length of time such meat was kept varied with that demand.

On July 21, 1952, the refrigerated car was spotted at the Empacadora plant. On July 28, 1952, the car was loaded, after being iced and salted, with 400 cartons of beef weighing approximately 100 pounds each. The testimony shows that the temperature of the car, when loading began, was 36 degrees, and that the temperature rose to 62 degrees while the car was being loaded. Two hours and twenty minutes after loading was completed, the temperature in the car had gone back to 42 degrees. On July 29th, the car was delivered to Texas and Pacific Railway Company in El Paso, Texas, and was inspected by Inspector Hamilton, of the Bureau of Animal Industry, and appellee's broker. At that time, the temperature of the car was 35 degrees. Dr. Frank Hamilton was the B.A.I. Inspector, and he testified that, to the best of his recollection, he inspected one carton of meat and found it to be good. The car was then sealed; and, some time early on July 30th, the car was dispatched to Jamaica, New York. The icing record of the car shows that the car was iced at regular intervals during the trip. About 1:00 A.M., August 4th, the car arrived at Jamaica, New York, and the contents of the car were inspected by the B.A.I. inspector, Mr. Bettencourt, and found to be spoiled and not fit for human consumption. He rejected the meat, as did the representative of the consignee, who was present at the time. There was testimony by the consignee's agent that one of the refrigerated car doors "was not tightly closed." Two railroad car inspectors checked the car on August 12th and found, in their written report, that the doors were in poor order and the canvas attached to seal the doors was rotten, and that such defects were old. There is further testimony that, on August 12th, when the car was further examined, the temperature of the meat was from 38 degrees to 40 degrees. This car inspector also testified that the doors of the car appeared to be ill-fitting and loose.

The pleadings and evidence of this case bring any resulting decision by the courts under United States Code Annotated, Transportation, Title 49, Section 20, Paragraph 11—otherwise known as the Carmack Amendment. This amendment, generally, holds that when a shipper delivers to the carrier property in good condition, for shipment interstate, and the property is in damaged condition when delivered to its destination, the shipper need not allege particular acts of negligence, and specific acts of negligence may be treated as surplusage. Hogg v. Louisville & N. R. Co., 33 Ga.App. 773, 127 S.E. 830; New Jersey Bell Tel. Co. v. Pennsylvania-Reading Seashore Lines, 11 N.J.Super. 129, 78 A.2d 150; Deming v. Missouri, K. & T. R. Co., 138 Okl. 276, 281 P. 240; Bancroft v. Yazoo & M. V. R. Co., 194 La. 115, 193 So. 481; Gore Products Inc. v. Texas & N. O. R. Co., La.App., 34 So.2d 418; Secretary of Agriculture v. United States, 350 U.S. 162, 76 S.Ct. 244, 100 L.Ed. 173.

Although in the present case the shipment started in Juarez, Mexico—a foreign country—there was only a switching carrier involved in the transfer from Juarez, Mexico, to El Paso, Texas, and appellant, who issued the bill of lading, was the initial carrier. Louisiana Southern Ry. Co. v. Anderson, Clayton & Co., 5 Cir., 187 F.2d 908; Fletcher L. Yarbrough & Co. v. Texas & N. O. Ry. Co., Tex.Civ.App., 226 S.W.2d 257.

At the time of delivery and acceptance of the carload of meat to the carrier, there was a bill of lading issued by appellant to appellee, noting the contents of the car as 42,040 pounds of cured beef, with icing instructions, and noting the routing of the car to its destination. Also contained in the bill of lading was the following language: "Received * * * at El Paso, Texas July 29, 1952 from Empacadora de C. Juarez, S.A. the property described below in apparent good order except as noted (contents and condition of contents of packages unknown)." Also contained on the face of the bill of lading was a notice that the car was sealed by an inspector of the Bureau of Animal Industry, and that the seals were not to be broken except by an inspector of that Bureau.

The parties to the suit stipulated that the refrigerated car in question was furnished by appellant; that the market value of the meat was $16,252.50, and that it was of no value when received at its destination; and that the car was iced as per instructions of appellee. With these stipulations, there is only one remaining factor necessary for appellee to prove its case under the aforementioned Carmack Amendment; and that is, proof that the meat was in good condition when appellant received same from appellee. The trial court, in its Findings of Fact, found that, at the time appellant accepted the carload of meat, the same was in good and sound condition and free of defects, and in an unspoiled condition. Appellant contends that there is insufficient evidence to support this finding, in that the court found, (1), appellee properly precooled the car before loading; (2), that the meat had not been stored too long before shipping; (3), the B.A.I. inspector's examination determining the condition of the meat was sufficient, in that only one carton of meat out of 400 was examined; (4), that the temperature of the car reached a safe point prior to acceptance of car by appellant; (5), that employees of appellee failed to notice any defects of the car.

It is true that the amount of evidence tending to show that the meat was good at the time appellee delivered it to appellant was slight; however, the testimony of Dr. Garza, the Mexican inspector, indicates that there were about ten inspections of the meat while it was in the Juarez plant, covering an inspection at the time of slaughtering, boning, mixing with salt, sodium nitrate and sodium nitrite, and storing. Also, he testified that the loading was under his supervision. The Mexican government's certificate in evidence certifies that the "meat and food derivations have been found in perfect hygienic condition and absolutely good for human consumption," before, during and after slaughter. In addition to Dr. Garza's testimony, Dr. Hamilton, of the Bureau of Animal Industry, checked the meat on appellant's tracks just before delivery to appellant; and, even though only one carton of meat was inspected, this must be considered as affirmative evidence. By way of rebuttal testimony, appellant attempted to get Dr. Garza to testify that the meat in question was kept too long, and, consequently, was in the process of spoiling at the time of shipment. Dr. Garza testified that this particular shipment was kept longer than usual, but nowhere did he testify that the meat was spoiled or beginning to spoil. In fact, the Mexican government inspection sheet, in evidence, would refute any such assumption. Appellant also used the testimony of a Joint Livestock Inspector, named Barnett, who was employed by the Southern Pacific and Santa Fe railways, in California. He first testified, "I don't think anybody can say positively how long it would keep, it would be a guess." This answer was given after the conditions surrounding this particular carload of meat had been explained to the witness. Later, the same witness testified that 40 days was the maximum that such beef could be safely kept, and the same witness testified that he knew nothing of this specific case. As this matter was heard before the trial court without a jury, we must assume that the tri-

al judge considered only admissible evidence, and if there is evidence to support the trial court's judgment, the appellate court is not at liberty to change that judgment. We believe that there was sufficient evidence to support the trial court's finding that the meat was in good condition when delivered to appellant; and, when considered with the stipulations of spoiled meat when reaching its destination, and the resulting damages, we believe the requirements of the Carmack Amendment have been satisfied. Deming v. Missouri, K. & T. R. Co., supra; Secretary of Agriculture v. United States, supra.

■ It was the duty of the carrier to furnish suitable cars for this particular class of goods, and the carrier could not be relieved of this responsibility by reason of the fact that consignor inspected the cars before loading. De Vita v. Payne, 149 Minn. 405, 184 N.W. 184; 9 Am.Jur. 634, sec. 340; Mexico Northwestern Ry. Co. v. Williams, 229 S.W. 476; Id., 257 U.S. 644, Tex.Com.App., 42 S.Ct. 54, 66 L.Ed. 413; Coustaline v. Louisiana Ry. & Nav. Co., 154 La. 667, 98 So. 81.

It would seem that, under the conditions of this present case, the carrier is assuming a calculated risk in transporting perishable goods. However, it is apparent from the record that the appellant could have inspected the meat at the same time the B.A.I. inspector did; and, had appellant wished, they could have rejected it. They did not do so.

In addition to pleading the Carmack Amendment, the appellee plead additional acts of negligence:

1. That appellant failed to furnish a suitable and proper car, in that the car furnished had defective door stiles, the canvas around the doors was rotten, the car doors were loose and ill-fitting; all of which caused the car to lose refrigeration; and

2. That appellant failed to keep the car properly refrigerated; and

3. That appellant failed to inspect the car before it was delivered to appellee and also after accepting the loaded car back for shipment.

While we do not believe that appellee was under any burden to prove specific acts of negligence of the carrier, due to the Carmack Amendment under the authority of Southern-Plaza Express, Inc. v. Harville, 5 Cir., 233 F.2d 264, we do believe that a brief comment on the evidence of such negligence might be helpful.

■ There is no affirmative evidence that the car in question was inspected by appellant prior to its delivery to appellee, even though it was known that such car was to carry meat. There is no evidence that the car was inspected by appellant after it was loaded by appellee and returned to appellant. There is no evidence that the car was inspected by appellant or any connecting carrier while in transit. There is evidence that, when the car reached its destination, the doors were loose and ill-fitting, and that the canvas used to seal these doors was rotten and torn. With this testimony in mind, we believe that the trial court had sufficient evidence before it to find that the car was defective and losing refrigeration while in appellant's control. Further, the trial court found that inspection by appellant would have discovered these defects, and that such defects were negligence, and the proximate cause of the damage. We believe there to be sufficient evidence to support the court's findings.

■ We believe that "the carrier is charged with the responsibility for the loss which, in fact, may not be due to his fault, but merely because the law, in pursuance of a wise policy, casts on him the burden to show facts relieving him of responsibility." Schnell v. The Steamship Vallescura, 293 U.S. 296, 55 S.Ct. 194, 79 L.Ed. 373; Yeckes-Eichenbaum, Inc., v. Texas Mexican Ry. Co., 5 Cir., 263 F.2d 791. The appellant in the present case, having failed to show facts relieving him of his respons-

bility as required under the Carmack Amendment, and the further acts of negligence on the part of the appellant as found by the trial court and supported by the evidence, is liable for the damage done.

Having overruled all of appellant's assignments of error, we affirm the judgment of the trial court.