TEXAS & P. RY. CO. v. THORP.   (No. 724.)

(Court of Civil Appeals of Texas. El Paso. Oct. 25, 1917.)

1. CARRIERS ☞230(7) — LIVE STOCK — DAMAGES IN SHIPMENT — INSTRUCTIONS — CONFORMITY WITH ISSUES.

Where there was evidence that the shipper of live stock was required under his contract to bed the stock and care for them en route, an instruction that if plaintiff was negligent in failing to inspect the cars or negligently failed to care for his cattle during transportation, and that such negligence was the proximate cause of the damage, plaintiff could not recover, was not sufficient to present the issue.

2. APPEAL AND ERROR ☞1002—SCOPE OF REVIEW—CONFLICTING EVIDENCE.

Where the evidence directly conflicts, the verdict of the jury should not be disturbed on appeal.

3. CARRIERS ☞230(9) — LIVE STOCK — DAMAGES IN SHIPMENT — INSTRUCTIONS — CONFORMITY WITH ISSUES.

Where the assignment of negligence is failure to properly bed a car for the shipment of cattle, a charge reading "Unless you do find from a preponderance of the evidence that the injury to said cattle, if any, was the proximate result of the failure of the defendant, to bed or properly bed the car or cars in question, your verdict will be for the defendant," is not amenable to the criticism that it assumes that defendant was guilty of negligence in failing to bed the car.

4. CARRIERS ⊙⟹208—LIVE STOCK—DUTIES OF CARRIER.

Where .the carrier undertook to bed the stock it was liable for failure to exercise ordinary care to perform such duty.

5. TRIAL ⊙⟹259(2)—SPECIAL INSTRUCTIONS—FILING.

A special charge requested by a party should be-filed before it is read to the jury.

6. TRIAL ⊙⟹259(2)—SPECIAL INSTRUCTIONS—FILING.

Where a special requested charge was read to the jury before being filed, but on objection was ordered filed, there was at most an irregularity and not error.

7. CARRIERS ⊙⟹228(3)—LIVE STOCK CARRIERS —DAMAGES IN SHIPMENT — EVIDENCE — ADMISSIBILITY.

In an action by the shipper of live stock for damages in transit, it was error to permit him to testify that he met a man who said he was the yardmaster, and who on request refused to give assistance in taking care of cattle, in the absence of proof that such person was in fact the carrier's yardmaster.

Appeal from Eastland County Court; Joe Burkett, Judge.

Action by A. L. Thorp against the Texas & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Earl Conner, of Eastland, for appellant. R. L. Rust, of Eastland, and Capps, Cantey, Hanger & Short, of Ft. Worth, for appellee.

WALTHALL, J. Appellant, Texas & Pacific Railway Company, perfects this appeal from a' judgment rendered in the county court of Eastland county in favor of appellee, A. L. Thorp, for damages alleged to have been sustained in the shipment of three cars of cattle from Ft. Worth to Cisco, Tex. The shipment of the cattle was made in three separate cars, and the negligence assigned causing the death of some of the cattle and injury to others is that one of the cars was not properly bedded. The appellee alleged that it was the duty of appellant to bed the car with sand and straw, or other suitable substance, in order that the cattle might thereby be enabled to' stand up in the car during the transportation; that unless the cars were properly bedded the car becomes slick and stock cannot stand up during shipment; that for lack of proper bedding the floor of the car in question was hard and became wet and slick and the cattle were unable, on account of that condition of the car, to stand up; that in the transportation of the cattle 16 head were thrown down and injured, and from their injuries died, and that other cattle in the car were injured.

The appellant's pleadings, among other things, contained a general denial; sets up a live stock shipment contract containing among other provisions that the shipper should accompany said shipment for the purpose of caring for said cattle during their transportation, and that the shipper at his own risk and expense is to take care of and attend the stock while the same is being transported, agreeing to hold the carrier harmless on account of loss or damage to the cattle while so cared for and attended to by the shipper. Appellant alleged that the cattle were in a weak and emaciated condition, and that appellee failed and neglected to care for said cattle during transportation; that many of the cattle would get down in the car during transportation, and that appellee made no effort whatever when the cattle were down to get them up on their feet; that if the cattle were injured same was the result of appellee's failure to care for the cattle during their transportation. The answer tendered other issues which we need not state. The charge of the court submitted the case on the general issue, and the jury returned a general verdict in favor of appellee.

The court instructed the jury among other things as follows:

"If you find from the evidence that the plaintiff was negligent in the failure to inspect the cars as to their being properly bedded before loading, and you further find that plaintiff negligently failed to care for and see after his said cattle during the transportation of same, and you further find from the evidence that such failure on the part of plaintiff, if any there were, was the proximate cause of the injury and death of said cattle, if any occurred, then your verdict will be for the defendant, Texas & Pacific Railway Company, and against the plaintiff, A. L. Thorp."

The appellant submitted to the court the following special charge No. 4:

"You are charged that if you find from the evidence that the plaintiff abandoned his cattle at Ft. Worth, Tex., and if you further find that the said cattle were damaged or injured or killed during transportation from Ft. Worth to Cisco after such time, and that such damage or injury was the proximate result of such abandonment, then you are instructed that the plaintiff would be estopped from complaining of any injurious consequence of such abandonment, you will find for the defendant as to such injury or damage."

The court refused to give the special charge.

The above copied portion of the general charge is the only charge found referring to or submitting the issues requested. The statement of the facts disclose that ample evidence was introduced on the trial to show that appellee was given reasonable opportunity during the transportation to care for the cattle and get those found down upon their feet, and that appellee not only failed but refused to do so. The witness J. Johnson having charge of other cars of cattle in the same train said:

"I offered to get in the cars with the owner and help them up at Mingus, but he would not do anything towards getting them. * * * They were badly down, spread out and too weak to get up without help. * * * We were at Weatherford and Mingus plenty long enough time for the shipper to have gotten these cattle up. * * * I know that we were talking about them being down and in bad shape at Mingus and I offered to go in the car with him

and help him get them up but he refused to do anything for them, and as he did not seem interested enough to look after his cattle I did not do anything further myself, he stating to me that the railroad had gotten them down and that they could look after them, or similar statements. * * * I think that practically all of them could have been gotten up on their feet, and rode better if they had been gotten up. Permitting cattle to remain down in the cars causes them to be trampled, bruised, and killed by the cattle able to stand up. A great deal more injury results to them while down in the cars than when standing up."

There was other evidence offered as to the opportunity of appellee to care for his cattle and his failure to do so. The evidence was conflicting as to the bedding in the car and as to the physical condition of the cattle.

[1] Appellant assigns error in the court's general charge quoted and in the refusal to give the special charge. We are of the opinion that the general charge of the court did not properly and sufficiently submit to the jury the issue of fact embraced in the pleading and proof, and that the court, his attention having been called to the error, should have either reframed the general charge so as to clearly submit to the jury the issues requested, or should have given the special charge requested, or a charge in lieu of the special charge, separate and apart from the issue as to the bedding of the car. If it was plaintiff's duty to inspect the car as to the bedding before loading, and it was also his duty to care for the cattle while in transportation, and he failed to perform either duty, and if the injury to the cattle complained of was the approximate result of appellee's failure to perform either duty the appellant was entitled to recover. The charge complained of confined appellant's rights to recover upon the failure of appellees to perform both duties. It may not be that it is the unqualified duty of the shipper under all circumstances, as a matter of law, to attend and care for his cattle while in transportation, as suggested in the special charge submitted, but in view of his contract, and the opportunity given the shipper to attend and care for his cattle, we think the appellant was entitled to have clearly submitted the issues of fact constituting so important a part of its defense.

[2] In view of another trial, we briefly indicate our view as to the disposition that should be made of the other assignments. The first assignment claims that the evidence is insufficient to support the verdict and judgment. The evidence is conflicting, and the jury having found against appellant, their finding should not be disturbed. The third assignment criticizes the general charge as being upon the weight of the evidence, in that it assumes negligence in killing some of the cattle and injuring others, and in failing to properly bed the cars and failing to handle the same in transportation with ordinary care. We do not believe the charge is amenable to the criticism made. The portion of the charge submitting the measure of damages to the cattle injured is not altogether free from objection. On a retrial we suggest that the charge follow the rule for the measure of damages as stated by the Supreme Court in Hovencamp v. Union Stockyards, 107 Tex. 421, 180 S. W. 225.

[3] Where the assignment of negligence is failure to properly bed a cattle car for the shipment of cattle, a charge reading:

"Unless you do find from a preponderance of the evidence that the injury to said cattle, if any, was the proximate result of the failure of the defendant, Texas & Pacific Railway Company, to bed or properly bed the car or cars in question, your verdict will be for the defendant,"

—is not amenable to the criticism that it assumes that the defendant was guilty of negligence in failing to bed the car, as claimed in the second assignment.

Special charges Nos. 2 and 3 are not in good form, and the court was not in error in refusing to give them. At the request of appellee the court gave the following charge:

"Should the jury find and believe from the evidence in this case that the defendant the Texas & Pacific Railway Company contracted and agreed to ship and transport from Ft. Worth, Tex., to Cisco, Tex., the said cattle as alleged in plaintiff's petition, then you are instructed that it was the duty of the defendant, the Texas & Pacific Railway Company, to furnish the plaintiff with cars properly bedded with suitable material in which to ship said cattle, and a failure to furnish said cars properly bedded would be negligence as that term has been hereinbefore defined in the general charge of the court."

[4] Appellant assigns error to the giving of this charge. The charge is subject to some of the criticisms made. The railroad company having undertaken to bed the cars it was its duty to properly bed them. H & T. C. Ry. Co. et al. v. Mayes et al., 97 S. W. 318. A failure to exercise ordinary care to perform such duty is all that is required. The charge placed a greater duty on the appellant than the law requires.

[5, 6] The special charge requested by appellee should have been filed prior to the reading of it to the jury. The bill of exceptions approved by the court shows that timely objection was made to the reading of the charge on the ground that it had not been filed. Article 1974, Rev. St. 1911, as amended by the Thirty-Third Legislature, c. 59 (Vernon's Sayles' Ann. Civ. St. 1914, art. 1974), requires that the requested instruction shall be filed with the clerk. The court, in approving the bill, states that the special charge was then ordered to be filed. The record does not otherwise show that the special charge was filed. The failure to file the charge before reading it to the jury was an irregularity, but we cannot say that it was such a denial of the rights of appellant as was reasonably calculated to cause and did cause the rendition of an improper judgment, or was such as probably prevented appellant from making a prop-

er presentation of the case to the appellate court. It was not reversible error.

[7] We think it was error to admit in evidence, over objection, the testimony of appellee, detailing a conversation he had with an unidentified man, and the reply made by the man to appellee's request as appears in the following:

"After I examined the cattle in west yards and found about half of them down in one car, I * * * started out to hunt the Texas & Pacific yardman, and on my way to the office I met some one coming toward us from the direction of that office, and when I came up to him I asked him where the yardmaster was, and he replied that he was the yardmaster himself. I then told the man the condition that I found the cattle in in one of the cars and asked him to do something with the cattle, and he replied, 'The cattle can stay there until hell freezes over before I will have a thing to do with them.' Then I told him that the cattle belonged to the company as I would have nothing more to do with them and he turned and walked away. I do not know who the man was except from what he said."

If it be conceded that the unidentified man with whom appellee had the conversation was the yardmaster at Ft. Worth (a fact not admitted), the question remains, How does the conversation between the appellant and the unidentified man tend to prove or to disprove any issue in the case, or have the effect of relieving appellant from any duty devolving upon him to look after and care for the cattle? What the appellant had done as to the bedding of the car had already been done; the cattle loaded in the car and the car put in the train of cars and moved some three or four miles from the place of loading ready for movement to its destination. The statement made by appellee to the man and his reply thereto had no reference to the condition of the car as to bedding, or the cause of the cattle being down in the car. In Cooper Grocery Co. et al. v. Britton, 74 S. W. 91, the court said that:

"Mere idle, desultory, or careless talk of the agent, having no legitimate reference to or bearing upon the business of his principal, cannot be binding upon the latter. And the statements, representations, or admissions must have been made by the agent at the time of the transaction, and either while he was actually engaged in the performance, or so soon after as to be in reality a part of the transaction. Or, to use the common expression, they must have been a part of the res gestæ."

In this case, to be admissible, the statement of the yardmaster (if he was the yardmaster) must have reference to the bedding of the car (the business of the master) and made at the time the car was bedded, or so soon thereafter as to be a part of or in connection with the bedding of the car. The admission of the evidence is error, was self-serving, in that he was permitted to state what he told the man was the condition of the cattle in the car, and was inflammatory in its nature as claimed in the appellant's proposition. This assignment is sustained. For errors discussed the case is reversed and remanded.

---

⊗⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes