## GULF, C. & S. F. RY. CO. v. SKLAR.

### No. 10891.

Court of Civil Appeals of Texas. Galveston.

Nov. 23, 1939.

Rehearing Denied Dec. 21, 1939.

Peareson & Peareson, of Richmond, and Terry, Cavin & Mills and Rupert R. Harkrider, all of Galveston, for appellant.

Helene G. Daily and Alexander T. Sidman, both of Houston, for appellee.

MONTEITH, Chief Justice.

This is an appeal in an action brought by appellee, Louis Sklar, against appellant, Gulf, Colorado & Santa Fe Railway Company, for damages to a shipment of cattle over appellant's line from Hitchcock, Texas, to Bowring, Oklahoma.

Appellee alleged that on April 3, 1936, he delivered to appellant 34 head of stock in sound condition for shipment from Hitchcock, Texas, to Bowring, Oklahoma; that during such shipment they were in the exclusive control of defendant's employes and wholly out of plaintiff's possession; that defendant delivered only 21 head of cattle to consignee at Bowring, Oklahoma; that of the 21 head delivered 2 died and the remaining 19 head were delivered in a damaged condition; that the death and injuries of said cattle were due to the negligence of the defendant and its connecting carriers in failing to exercise proper and ordinary care incumbent upon it, but that the peculiar acts or omissions of such negligence were peculiarly within the knowledge of the defendant and unknown to plaintiff and that he could not state them with greater certainty.

Appellant answered by general demurrer, general denial, and special exceptions. It specially alleged that immediately prior to shipment the cattle were dipped by some one other than appellant in an arsenical solution while the cattle were overheated, tired, and excited by improper driving and handling; that as a result the cattle were poisoned in some manner unknown to defendant, and that the death and injury to said cattle were the result of said poisoning and the inherent propensities, character and vices of the cattle. Appellant alleged that said cattle were transported in cars which were in proper condition, including proper bedding; that appellee accepted the cars in which they were shipped and that he is thereby estopped to recover any damages for injuries which resulted from the condition of said car or its bedding. Appellant also pled the two year statute of limitation.

The case was tried before a jury, who, in answer to special issues submitted, found that defendant failed to properly bed the cars; that it handled the cattle in an unnecessarily rough manner; that it discovered at Gainesville, Texas, that the cattle required the services of a veterinary and that it failed to obtain such services for them. In each instance the acts alleged were found to constitute negligence and such negligence was found to be a proximate cause of the injuries and death of the cattle. The jury also found that the cattle were in good condition when loaded and that the 15 head that died were reasonably worth $35 per head at Bowring, Oklahoma; that the difference between the 19 head delivered in good condition and in the condition in which they were delivered was $15 per head. The jury found that the cattle did not suffer from arsenical poison, and that the inherent vices, propensities, and characteristics of the cattle did not proximately cause the death or injuries suffered. Based on the above findings, judgment was rendered in favor of plaintiff and against defendant in the sum of $937.98.

The record shows that appellee, through his employee, Dick Koy, purchased the 34 head of Brahma type cattle in question from one Fred Benson; that they were driven from the Benson pasture at Hulen Park to the railroad pens at Hitchcock, Texas, a distance of between 4 and 5 miles, leaving Hulen Park at about 9 o'clock in the morning on April 3d and arriving at Hitchcock at about 3 o'clock in the afternoon. On arrival at the railroad pens the cattle were branded, their horns were tipped, and they were dipped in an arsenical solution under the supervi-

sion of a Government inspector. The dipping of the cattle was completed at about 5 o'clock, after which they were left in the pens until about 9 o'clock that night, when they were loaded into a cattle car furnished by appellant. The cattle showed no unusual signs of being tired or excited when they arrived at the railroad pens at Hitchcock.

The car in which the cattle were first loaded left Hitchcock at 9 o'clock P. M. on April 3d; it arrived at Bellville on April 4th, and was there unloaded and the cattle placed in another car. It arrived at Gainesville on the morning of April 5th. Here the cattle were unloaded but reloaded on the following morning in the same car. The car arrived at Bowring, Oklahoma, on the afternoon of April 7th.

The car in which the cattle were loaded was bedded with sand by appellant prior to its arrival at Hitchcock. Certain witnesses testified that the bedding was not over an inch and a half in thickness, while others testified that it was more than three inches in depth. There is no testimony by witnesses of appellee as to the condition of the car loaded at Bellville, though appellant's witnesses testified that the car was properly bedded. There is testimony that a bedding of sand is put in the bottom of cattle cars to prevent them from getting wet and to keep the cattle from slipping down. Cattle were down in both cars at various points between Hitchcock and Bowring.

The cattle reached Gainesville on the morning of April 5th. Three head were dead on its arrival and five were down. The agent of appellant did not call a veterinarian to treat said cattle until the following morning, at which time six more of the cattle were found to be dead. Appellant introduced testimony to the effect that the injuries and death of said cattle were due to arsenical poisoning.

The cattle in question were shipped under what is known as a "Uniform Live-Stock" contract. It is uncontroverted that no caretaker accompanied the shipment.

■ It is now the established law of this state that where a caretaker does not accompany a shipment of cattle, delivery to the carrier and redelivery by the carrier to the shipper at destination in an injured condition raises a presumption of negligence by the carrier which it must disprove. Gulf, C. & S. F. Ry. Co. v. Taylor, Tex.Civ.App., 101 S.W.2d 642; Pecos & N. T. Ry. Co. v. Brooks, Tex.Civ.App., 145 S.W. 649; Gulf, C. & S. F. Ry. Co. v. King, Tex.Civ.App., 174 S.W. 960; Galveston, H. & S. A. Ry. Co. v. Neville, Tex.Civ.App., 272 S.W. 597.

This rule is followed in 8 Texas Jurisprudence, page 553, section 386, which reads: "Where it is shown that live stock were delivered to the carrier in good condition, that the shipper or his agent did not accompany them under a contract to care for them during transit, and that they arrived at destination dead or in injured condition, negligence is ordinarily presumed to the extent that the shipper is said to have made out a prima facie case. The burden of proof is then upon the carrier to overcome this presumption by proof that death or injury resulted from independent causes or acts for which it was in no way responsible."

■ Further, it has been definitely established in this state that the carrier must furnish to the shipper cars suitable for the purpose intended, and that if the cars furnished can only be made reasonably suitable and safe by bedding them with sand, it is the carrier's duty to provide that bedding. Kansas City, M. & O. Ry. Co. v. Weatherby, Tex.Civ.App., 203 S.W. 793; Mexico N. W. Ry. Co. v. Williams, Tex.Com.App., 229 S.W. 476. It is held that if the carrier undertakes to bed the cars, whether bound to do so or not, it must exercise at least ordinary care to see that the bedding is properly done, Texas & Pac. Ry. Co. v. Thorp, Tex.Civ.App., 198 S.W. 335; Houston & T. C. Ry. Co. v. Mayes, 44 Tex.Civ.App. 31, 97 S.W. 318, and that the carrier is liable for damages resulting from his own negligence in failing to properly bed the cars; 8 Tex. Jur. page 465, sec. 314; Gulf C. & S. F. Ry. Co. v. Cunningham, 51 Tex.Civ.App. 368, 113 S.W. 767; 13 Corpus Juris Secundum Carriers, p. 100, § 54.

■ In the instant case appellee pled and the jury found, on evidence which is deemed to be sufficient, that the cattle were delivered to the carrier in good shipping condition and in apparently good health. The evidence is uncontroverted that when the cattle were redelivered to consignee at destination a number of said cattle were dead and others injured.

No representative of the shipper accompanied the cattle in transit. The shipper was, therefore, without means of knowing or proving the manner or condition in and under which the cattle were transported. Under the above authorities the burden of proving these facts rested upon the carrier and upon its failure to meet this burden, appellant cannot complain because judgment was rendered in favor of appellee.

While the carrier pled the affirmative defense that the injury and death among the cattle was due to arsenical poisoning caused by dipping, and to the inherent propensities, character and vices of the cattle, and pled specially that the cattle were transported in cars which were in proper condition, including proper bedding, the jury found in answer to issues submitted that the injuries and death of said cattle were not due either to arsenical poisoning or inherent vices or propensities of the cattle; and they further found that appellant was negligent in failing to properly bed said cars; that it handled said cattle in an unnecessarily rough manner, and that it failed to obtain medical services for them at Gainesville; that such failure in each instance was negligence, and that such negligence was a proximate cause of the damages complained of.

Under the above facts the only question to be determined by this court is whether there was sufficient evidence to support the jury's findings on said issues. We conclude that, while this court might not have answered all of said questions as the jury did, there was enough evidence under each issue to support the jury's findings.

■ Appellant contends that the court committed reversible error in not sustaining its special exception, to the effect that no specific acts of negligence were alleged by appellee. We cannot sustain this contention.

In the recent case of Gulf, C. & S. F. Ry. Co. v. Taylor, Tex.Civ.App., 101 S.W. 2d 642, appellee therein also sought recovery of damages based on the common liability of the common carriers, alleging that he delivered his cattle to the initial carrier at the point of origin in good condition, and that they were redelivered by the carrier at destination with a portion of said cattle dead and others injured. The court, in passing on the exact question raised by appellant here, said:

"Nowhere in its answer did appellant plead that the cattle were in charge of a caretaker, nor seek to place the burden upon appellee to show specific acts of negligence for that reason. Nor did its contract undertake to do so. In addition to pleading negligence generally, appellee also alleged that he was unable to state specifically the acts of negligence alleged, but that same were well known to appellant, its servants and agents.

"The general rules are now well settled that, where a caretaker does not accompany a shipment of cattle, delivery to the carrier in good condition and redelivery by the carrier to the shipper at destination in an injured condition raises a presumption of negligence by the carrier which it must disprove."

In the instant case no caretaker accompanied the shipment of cattle.

■ ■ Appellant further assigns error in the action of the court in submitting to the jury the issue of defendant's negligence in failing to properly bed the cars in which the cattle were shipped, and in refusing to submit defendant's specially requested issue No. 4 as to whether appellee knew of the condition of the bedding in said car before it left Hitchcock, on the ground that it had alleged and the evidence showed that appellee and his agents "knew of the condition of said bedding prior to the loading of said cattle, and that therefore he was precluded from recovering damages caused thereby."

There are no allegations in appellant's pleadings that appellee knew of the bedding of said car, nor are there allegations to the effect that appellee had knowledge of the condition of said bedding through the instrumentality of his agents.

Appellant pled, in connection with the transportation of said cattle, "that it transported or caused same to be transported in cars which were then in proper condition, including proper bedding", and "that the plaintiff accepted the car in which said cattle were loaded at Hitchcock in its then condition, and if any injury to said cattle occurred by reason of the condition of said car or the bedding thereof, which is not admitted but denied, the plaintiff, under the conditions of said contract, is estopped thereby to recover any damages for injuries which resulted from any condition of said car."

The contract referred to in the above quoted portion of defendant's pleadings is a "Uniform Live-Stock" contract under

which the cattle were shipped. An examination of this instrument discloses that it contains no provision that the shipper by accepting the car estops himself from recovering damages resulting from its improper bedding.

The jury found the appellant guilty of negligence in failing to properly bed said car and that such negligence was a proximate cause of the injuries and death of said cattle.

In support of its contention that, since appellee and/or his agent, Dick Koy, knew of or had an opportunity to discover the condition of the bedding in said car, and that by reason of said fact he is chargeable with knowledge of the condition thereof and is estopped to claim damages by reason of its insufficiency, appellant cites the following cases: Kansas City, M. & O. Ry. Co. of Texas v. Moore, Tex. Civ.App., 11 S.W.2d 335; Kansas City, M. & O. Ry. Co. v. Weatherby, Tex.Civ.App., 203 S.W. 793, and Texas Central Ry. Co. v. O'Laughlin, Tex.Civ.App., 72 S.W. 610.

From an analysis of the facts in the three cases above referred to, we find that in each case the issue as to plaintiff's knowledge as to the condition of the cars in which the cattle were shipped was raised by both the pleadings and the evidence. They hold that, being aware of the extent and condition of the bedding of the cars, and said issue having been raised by both pleadings and evidence, the appellees were estopped from claiming damages by reason thereof.

In the instant case, in the absence of either pleading or evidence in the record that either appellee or his acknowledged agent, Dick Koy, had actual knowledge of the condition or extent of the bedding in said car, and in the absence of a finding, or the request for the submission of an issue as to whether the parties who did testify in reference to the condition of said bedding were the agents of appellee, appellant having pled that the bedding in the car in which the cattle were shipped was in proper condition, we think that the court was justified in submitting the issue as to defendant's negligence in failing to properly bed said car, and in refusing to submit appellant's specially requested issue No. 4 as to whether appellee knew of the condition of said bedding.

■ We cannot sustain appellant's contention that the court erred in refusing to submit its requested issue No. 5, as to whether plaintiff had opportunity to ascertain the condition of the bedding of the car in which the cattle were loaded before it left Hitchcock, and in refusing to submit its requested issue No. 5a, as to whether an ordinarily prudent person would have examined the condition of the car at Hitchcock prior to its being loaded.

■ While it has been held that where a shipper's knowledge of the condition and extent of the bedding in a car is raised by the pleadings and evidence and it is shown that he accepted or acquiesced in the same when the cars were loaded, the carrier would not be liable for injuries resulting to the cattle by reason of the improper bedding, we know of no rule which makes it the duty of a shipper of livestock, in the absence of an express contract to do so, to inspect the bedding of cars prior to shipment.

Further, while the record shows that both appellee and his acknowledged agent, Dick Koy, were present when said cattle were being loaded, there is neither pleading nor proof that either had actual knowledge of the condition or extent of the bedding of said car. The jury found, in answer to issues submitted, that appellant was negligent in failing to properly bed said car and that such negligence was a proximate cause of the injuries and death of the cattle.

Under the above facts, we think that the court's action in refusing to submit appellant's requested issues Nos. 5 and 5a should be sustained.

Other assignments are presented by appellant in its brief. We think, however, that our disposition of what we consider to be the controlling assignments in the case above discussed render the remaining assignments immaterial, and that the judgment of the trial court should be in all things affirmed.

Affirmed.